FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

ORIGINAL

LUTHER D. THOMAS, Clerk
By:
Deputy Clerk

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Davis v. World Championship Wrestling, Inc. and Turner
Sports, Inc., Civ. File No. 1-00-CV-1716-CC;
Saengsiphan v. World Championship Wrestling, Inc. and
Turner Sports, Inc., Civ. File No. 1-00-CV-1719-CC;
Speight v. World Championship Wrestling, Inc. and Turner
Sports, Inc., Civ. File No. 1-00-CV-1718-CC;
Worthen v. World Championship Wrestling, Inc. and Turner
Sports, Inc., Civ. File No. 1-00-CV-1717-CC;
Reeves v. World Championship Wrestling, Inc. and Turner
Sports, Inc., Civ. File No. 1-00-CV-1720-CC;
Easterling v. World Championship Wrestling, Inc. and Turner
Sports, Inc., Civ. File No. 1-00-CV-1715-CC
Onoo v. World Championship Wrestling, Inc., Turner Sports,
Inc., Civ. File No. 1:00-CV-0368-CC
Norris v. World Championship Wrestling, Inc., Turner
Sports, Inc., Civ. File No. 1:00-CV-0369-CC
Walker v. World Championship Wrestling, Inc., Turner
Sports, Inc., Civ. File No. 1:00-CV-0367-CC
Claude Patterson v. World Championship Wrestling, Inc.,
Turner Sports, Inc. and Turner Entertainment Group, Inc.,
Civ. File No. 1:01-CV-1152-CC

**PLAINTIFFS' MOTION TO STRIKE ANSWERS OR FOR OTHER APPROPRIATE
SANCTIONS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

### I.   INTRODUCTION AND STATEMENT OF RELEVANT FACTS

**A.   The Basis for this Motion**

This motion arises out of the calculated discovery abuse of

Defendant World Championship Wrestling, Inc. ("WCW").

Specifically, as will be shown, WCW has purposefully withheld

employee-race information critical to Plaintiffs' disparate

impact claims under the ruse that it simply did not have access

to that information.  Recent developments establish beyond

question that WCW's representations in this regard were false –

it can, and has, availed itself of access to that information in other litigation.  Thus, Plaintiffs present this motion seeking appropriate sanctions for WCW's purposeful obstruction of Plaintiffs' discovery efforts.

**B.   The Nature of the Information Purposefully Withheld by WCW**

WCW has insisted throughout this litigation that it is unable to determine the races of its own wrestlers.  See, e.g., April 23, 2002 correspondence to the Court jointly submitted by the parties, attached hereto as Exhibit "A," at p. 3.[1]  WCW's has strategically used this supposed informational vacuum in its efforts to undermine Plaintiffs' statistical analysis to prove unlawful discrimination on the basis of race in this case.  See, e.g., Reid v. Lockheed Martin Aero. Co., 205 F.R.D. 655, 667 (N.D. Ga. 2001) ("Disparate impact is generally established by statistical evidence, which should show that there is a legally significant disparity between (a) the racial composition, caused by the challenged employment practice, of the pool of those enjoying a...job benefit; and (b) the racial composition of the qualified applicant pool")(internal quotations and citations omitted).

---

[1]     "Defendants have repeatedly explained to the Plaintiffs that these individuals were independent contractors . . . not employees.  Accordingly, WCW did not record or track the race or ethnicity of these individuals and does not have records reflecting these individuals' races or ethnicities[.]"

On December 17, 2002, WCW filed summary judgment motions in

the Onoo, Walker, and Norris matters pursuant to the Court's

December 4, 2002 scheduling Order.  WCW attached to its briefs

filed in support of those motions an Order granting WCW's motion

for summary judgment in a previous Title VII action, Ross v.

World Championship Wrestling, Inc., 1:93-CV-1206-JEC (the

"Order").  A true and correct copy of the Order is attached

hereto as Exhibit "B."  In that Order, the Court includes within

its findings of fact the following:

> During the period of Plaintiff's association with WCW,
> defendant employed approximately 334 male wrestlers.
> The vast majority (approximately 300)  of these male
> wrestlers were white.  Plaintiff's rate of
> compensation was higher than approximately 278 of
> these new wrestlers.

See Order, p. 9.

Significantly, because the plaintiff's opposition to WCW's

summary judgment motion was procedurally deficient, the Ross

Court accepted as true WCW's Statement of Material Facts Not in

Dispute ("Statement").  Id., p. 4.  A true and correct copy of

the Statement is attached hereto as Exhibit "C."  In the

Statement, WCW provides specific racial identification

information regarding wrestlers, some of whom were still with

WCW when it closed in 2001.[2]  Specifically, WCW took the

---

[2] WCW identified Rick Flair, Lex Lugar and 13 other wrestlers as
white and two as black.  See Statement, ¶¶ 7-10.

position, supported by a sworn affidavit, that although it "d[id] not keep records" of its wrestlers, **a large majority of the [wrestlers] were white.**  See Statement, ¶ 11.  This assertion is plainly contrary to the representations made to this Court and to Plaintiffs' counsel that WCW was incapable of identifying the race of its wrestlers because of its lack of racial record-keeping.  Indeed, the representation made to the Ross court makes clear that WCW is capable of identifying the race of the "large majority" of its wrestlers.

The Order and Statement plainly disprove WCW's protests in this case that it is incapable of determining the race of its own wrestlers and providing that information to Plaintiffs. Indeed, alleged lack of records notwithstanding -- it is now evident that WCW's failure to provide this information in the present case was due not to a lack of ability, but rather to a lack of inclination.  Plaintiffs have sustained undue burden and tremendous expense as a consequence of WCW's stonewalling.  This is precisely the type of discovery gamesmanship that authorizes the imposition of sanctions.

## II.   ARGUMENT AND CITATION TO AUTHORITY

Fed. R. Civ. P. 37 (c)(1) provides in relevant part:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2) is not, unless such failure

> is harmless, permitted to use as evidence at a trial,
> at a hearing, or on a  motion any witness or
> information not so disclosed.  In addition or in lieu
> of this sanction, the court, on motion and after
> affording an opportunity to be heard, may impose other
> appropriate sanctions.

See Fed. R. Civ. P. 37(c)(1).  When a party "fails to cooperate

in discovery," Rule 37 permits the court "to strike out

pleadings and render default judgment against the disobedient

party."  See Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir.

1987).  See also Malautea v. Suzuki Motor Corp., 148 F.R.D. 362,

373 (S.D. Ga. 1991) (striking answer where defendant engages in

"bad faith decision to avoid revealing the truth at all costs").

In addition to the authority to sanction established by Fed. R.

Civ. P. 37, "[e]very court has inherent power to sanction

attorneys and litigants if necessary to manage the court's

affairs."  Id. at 370.  See also Carlucci v. Piper Aircraft

Corp., 775 F.2d 1440, 1446 (11th Cir. 1985)("It is beyond

peradventure that all federal courts have the power, by statute,

by rule, and by common law, to impose sanctions against

recalcitrant lawyers and parties litigant").

    In the present case, Defendant WCW purposefully withheld

critical information to frustrate Plaintiffs' pursuit of their

claims.  Moreover, WCW's representations regarding its alleged

inability to determine the races of its own wrestlers were

untruthful.  WCW's misconduct in this regard was egregious.

Indeed, it is clear that WCW is perfectly capable of identifying the races of its wrestlers when it is in its best interests to do so, as was the case in the Ross litigation.

The intent of WCW to deceive counsel and the Court is made even more apparent by the fact that WCW did not disclose any information to Plaintiffs regarding the Ross case in discovery. Indeed, WCW first disclosed the existence of the Ross matter only when it thought it could use the case as precedent in this case to defeat the Title VII claims of the Plaintiffs.

Accordingly, the only issue raised by this motion is the level of sanctions that is appropriate.  Plaintiffs respectfully submit that any of the following sanctions against WCW are warranted, individually or in the aggregate:

**A.    An Order Striking WCW's Answer**

A court may strike the pleadings of a litigant where, as here, that litigant has engaged in willful discovery misconduct. See Buchanan 820 F.2d at 361; Truck Treads, Inc. v. Armstrong Rubber Co., 818 F.2d 427, 429 (5th Cir. 1987); Malautea, 148 F.R.D. 362.  Although this remedy is typically applied in instances where a party disobeys a discovery Order, the remedy is arguably even more appropriate under the present facts because WCW has both withheld discoverable information and misled Plaintiffs and the Court with respect to its alleged

inability to access this information.  The Court most certainly
would have required WCW to disclose racial identification
information had it known WCW was capable of doing so and in fact
had done so before.[3]

Regrettably, this is not the only instance where WCW has
delayed the disclosure of information or otherwise obstructed
Plaintiffs' discovery efforts.  If WCW cannot defend itself
within the confines of the Federal Rules of Civil Procedure and
without resort to dishonest discovery tactics, then the Court
can -- and should -- strip WCW of its ability to defend itself
at all.

**B.    An Order Striking WCW's Summary Judgment Motions**

In the event the Court determines that the striking of
WCW's answers is not warranted, WCW should certainly not be
permitted to profit from its deliberate concealment of
information and misrepresentations regarding its ability to
access that information.  Thus, the Court may also in its

---

[3]   If the Court harbors any doubt as to the effect WCW's
*deception has had, it should reflect upon this question:* Would
the Court have accepted WCW's argument that it was incapable of
racial identification had it had the Statement of Facts and
supporting affidavit from Ross before it at the time of WCW's
representations?  It is difficult to imagine that this Court
would have accepted that WCW was incapable of racial
identification after it told Magistrate Judge Harper that **"a
large majority of [its wrestlers] were white."**

discretion enter an Order striking WCW's summary judgment motions in the <u>Onoo</u>, <u>Walker</u>, and <u>Norris</u> matters.

**C.    An Order Estopping WCW From Challenging Plaintiffs'
Evidence Regarding the Races of WCW Wrestlers and Awarding
Plaintiffs the Fees and Expenses They Have Incurred as the
Result of WCW's Misconduct**

Because of WCW's failure to identify the races of its wrestlers during specified years, Plaintiffs have been forced to undertake time consuming and expensive efforts to ascertain this information on their own.  Given the foregoing, at a minimum, the Court should enter an Order estopping WCW from challenging the evidence Plaintiffs present in opposition to WCW's summary judgment motions and at trial regarding the racial composition of WCW's wrestlers.  Simply put, WCW should have undertaken this exercise on its own and had every opportunity to do so.  It should be held to the consequences associated with its tactical decision to shift this burden upon Plaintiffs.

In addition, the Court should require WCW to reimburse Plaintiffs for the scores of hours and unnecessary expenses they have incurred in connection with the filing of this motion, litigating this issue over the past several months, and ascertaining the disputed information at issue in this motion on their own.  It is now clear that Plaintiffs have been given the "runaround" with respect to identifying the races of WCW wrestlers.  They should not be required to bear the burden of

- 8 -

WCW's discovery failures in this regard.  Plaintiffs will prove the amount of the fees and expenses they seek to recover at a hearing before the Court upon this motion or, alternatively, will submit an affidavit outlining these expenses upon instruction by the Court.

### III. CONCLUSION

WCW has willfully withheld information that is central to Plaintiffs' disparate impact claims under the untruthful ruse that it was incapable of providing this information.  This is egregious discovery misconduct.  Moreover, Plaintiffs have been materially prejudiced by these developments.  The Court should enter appropriate sanctions accordingly.

Respectfully submitted this 14th day of January, 2003.

Cary Ichter, Esq.
Ga. State Bar No. 382515
Charles Gernazian
Georgia Bar No. 291703
Michelle M. Rothenberg
Georgia Bar No. 615680
Attorneys for Plaintiffs

**MEADOWS, ICHTER & BOWERS, P.C.**
Fourteen Piedmont Center, Suite 1100
3535 Piedmont Road
Atlanta, GA  30305
(404) 261-6020

Attorneys for Plaintiffs

- 9 -

## CERTIFICATE OF SERVICE

This is to certify that I have this date served opposing counsel to this action with the foregoing **PLAINTIFFS' MOTION TO STRIKE ANSWER OR FOR OTHER APPROPRIATE SANCTIONS AND MEMORANDUM OF LAW IN SUPPORT THEREOF** by depositing a copy of the same in the United States Mail with adequate postage, addressed as follows:

> Eric Richardson, Esq.
> Evan Pontz, Esq.
> Troutman Sanders LLP
> Suite 5200, Bank of America Plaza
> 600 Peachtree Street, N.E.
> Atlanta, Georgia  30308-22165

This 14th day of January, 2003.

Cary Ichter
Georgia Bar No. 382515



# EXHIBIT / ATTACHMENT

## _____A_____

(To be scanned in place of tab)

# MEADOWS, ICHTER & TRIGG

ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION

EIGHT PIEDMONT CENTER, SUITE 300
3525 PIEDMONT ROAD, N.E.
ATLANTA, GEORGIA 30305
TELEPHONE: 404-261-6020
FACSIMILE: 404-261-3656
http://www.mitlaw.com

April 23, 2002

**VIA FACSIMILE & U.S. MAIL**
The Honorable Janet F. King
United States Magistrate Judge
United States Courthouse, Chambers 1613
75 Spring Street, SW
Atlanta, Georgia   30303

Re:   Davis v. World Championship Wrestling, Inc. and Turner
Sports, Inc., Civ. File No. 1-00-CV-1716-CC;
Saengsiphan v. World Championship Wrestling, Inc. and
Turner Sports, Inc., Civ. File No. 1-00-CV-1719-CC;
Speight v. World Championship Wrestling, Inc. and
Turner Sports, Inc., Civ. File No. 1-00-CV-1718-CC;
Worthen v. World Championship Wrestling, Inc. and
Turner Sports, Inc., Civ. File No. 1-00-CV-1717-CC;
Reeves v. World Championship Wrestling, Inc. and
Turner Sports, Inc., Civ. File No. 1-00-CV-1720-CC;
Easterling v. World Championship Wrestling, Inc. and
Turner Sports, Inc., Civ. File No. 1-00-CV-1715-CC;
Onoo v. World Championship Wrestling, Inc. and Turner
Sports, Inc., Civ. File No. 1:00-CV-0368-CC; Norris v.
World Championship Wrestling, Inc. and Turner Sports,
Inc., Civ. File No. 1:00-CV-0369-CC; Walker v. World
Championship Wrestling, Inc. and Turner Sports, Inc..,
Civ. File No. 1:00-CV-0367-CC; Patterson v. World
Championship Wrestling, Inc., Turner Sports, Inc. and
Turner Entertainment Group, Inc., Civ. File No. 1:01-
CV-1152-CC

Dear Judge King:

    Pursuant to your request, the parties hereby submit their
proposed agenda for the upcoming April 25, 2002, Rule 16
scheduling conference.  Where appropriate, the parties will
designate the issues to which they jointly agree and seek the
Court's approval and/or guidance.  To the extent that the
parties have differing positions, we will highlight the parties'
respective positions.

MEADOWS, ICHTER & TRIGG

The Honorable Janet F. King
April 23, 2002
Page 2

The parties would like to discuss the following matters
during the Rule 16 Conference:

1.   **Resolution of Remaining Discovery Disputes:**

**By Plaintiffs:**

The parties have resolved many discovery disputes, but need
the Court's assistance in resolving the scope of Defendants'
obligations as to the following:

Statistical Evidence of Discrimination:

Plaintiffs have sought discovery of information
demonstrating the race of individual performers at WCW in order
to demonstrate racial disparities at WCW (particularly, the
racial disparities as to WCW's treatment of African-American
wrestlers regarding the terms and conditions of wrestling
contracts and merchandising and licensing contracts).

In order to obtain such information, Plaintiffs initially
served comprehensive Interrogatories requesting Defendants to
identify (in addition to other information regarding each
wrestler), the racial identity of the wrestlers during the
relevant time period.  (See Defendant WCW's Response to
Plaintiffs' Consolidated First Interrogatories Nos. 3, 7, and 8
attached herewith).

When Defendants stated they could not produce such
information, Plaintiffs agreed to accept documents that showed
such information (in lieu of a response to the interrogatory).
Plaintiffs, however, did not receive such documentation.
Plaintiffs then served additional interrogatories seeking to
discover racial statistics as to the top ten Performers at WCW,
but Defendants did not produce adequate responses to those
interrogatories.  (See Defendant WCW's Response to Plaintiffs'
Second Interrogatories Nos. 1-4, attached herewith).

**By Defendants:**

Defendants agree with Plaintiffs that the parties have
successfully resolved a number of discovery disputes that have

MEADOWS, ICHTER & TRIGG

The Honorable Janet F. King
April 23, 2002
Page 3

arisen in these ten (10) cases.  The parties are currently
working to resolve all remaining discovery disputes, and
Defendants believe that they will be successful in these
efforts.

Specifically, with regard to the races or ethnicities of
individual performers at WCW.  Defendants have repeatedly
explained to Plaintiffs that these individuals were independent
contractors (either under formal written contracts or providing
services without a formal written agreement), not employees of
WCW.  Accordingly, WCW did not record or track the race or
ethnicity of these individuals and does not have records
reflecting these individuals' races or ethnicities, nor is it
aware of how all of the performers would have themselves
identified their races or ethnicities.  Defendants have not
failed to provide any information or documents that they have
that is responsive to Plaintiffs' discovery requests.

For these reasons, Defendants believe that it is premature
and unnecessary for this Court to address these discovery issues
raised by Plaintiffs at the Rule 16 Conference.

        <u>Additional Discovery Disputes:</u>

In addition to the disputes over statistical information,
Plaintiffs have identified several remaining issues with respect
to the discovery provided to date (which has been memorialized
in a letter to defense counsel dated April 3, 2002, a copy of
which is attached herewith).

   2.   **<u>Depositions of Fact Witnesses Outside of the Discovery
        Period For Use at Trial Pursuant to Federal Rule 32</u>**

**By Plaintiffs:**

Because the parties have identified a few witnesses who
reside outside of the State of Georgia, and because their
testimony will not be necessary in connection with any motions
for summary judgment, the parties would like to reserve the
right to take these witness' depositions (for the purposes of
preserving their testimony for trial pursuant to Rule 32) <u>after</u>
the adjudication of any motions for summary judgment.

MEADOWS, ICHTER & TRIGG

The Honorable Janet F. King
April 23, 2002
Page 4

**The parties, therefore, jointly request that the Court
provide them with assurance that they will be able to take such
depositions outside of the discovery period.**

**By Defendants:**

Plaintiffs have not specifically identified who the
individuals are that they would like to depose outside of the
discovery period in these case (or even how many such
individuals there are).  Without this information, Defendants
cannot determine whether they would oppose such depositions
after discovery, thought they reserve the right to do so.
However, Defendants agree the learning the Court's view on the
taking of such depositions outside of the discovery period would
be helpful to both parties.

3.   **Identifying and Taking of Expert Witness Testimony**

**By Plaintiffs:**

Plaintiffs intend to use expert testimony regarding the
statistical evidence of race discrimination in this case.
Plaintiffs have been delayed in retaining experts, in part,
because Defendants have not produced statistical information,
and have refused to identify the racial composition of its
workforce.

Plaintiffs will engage two experts in the near future, and
seek the Court's guidance as to Plaintiffs' obligations under
Federal Rule of Civil Procedure 26(a)(2), as well as a proposed
schedule for the depositions of Plaintiffs' experts should
Defendants seek their depositions.

**By Defendants:**

Defendants propose that the Court create a schedule solely
for expert discovery, to begin after the existing discovery
period closes on June 1, 2002.  The Court could first set a
specific date for Plaintiffs to identify their experts and
provide their expert witnesses' reports, a date (such as 45 days
later) for Defendants to identify any rebuttal expert witnesses
and to provide their reports, and then a reasonable time frame

MEADOWS, ICHTER & TRIGG

The Honorable Janet F. King
April 23, 2002
Page 5

after the reports have been reviewed for both parties to conduct
depositions of these experts, as necessary and appropriate.

Defendants also note that they have not refused to produce
statistical information or identify the racial composition of
its workforce.   As repeatedly stated, Defendants do not have
records reflecting the information on performers races or
ethnicities that Plaintiffs have requested.

### 4.    Statistical Evidence of Discrimination - Videotape Evidence

**By Plaintiffs:**

Because Defendants have not produced statistical
information concerning the racial composition of its workforce,
Plaintiffs will offer, among other things, videotaped evidence
which demonstrates the racial identity of wrestlers who tried
out and trained at WCW.

Plaintiffs seek this Court's guidance as to the most
effective and appropriate way to handle this evidence.

**By Defendants:**

Defendants do not possess documents reflecting the
statistical information regarding the racial composition of its
former contract or non-contract performers.   Defendants reserve
the right to object to any videoptaped evidence (or other
evidence) offered to purportedly demonstrate the racial identity
of wrestlers on all applicable grounds under the Federal Rules
of Evidence and Rules of Civil Procedure.   Plaintiffs have not
even identified what this videotaped evidence (other evidence)
consists of, and Defendants have not had an opportunity to
review such purported evidence.

### 5.    Timing, Page Limitations, and Formatting of Summary Judgment Pleadings

**By Plaintiffs:**

Because the Court will need to resolve (ten) 10 separate
motions for summary judgment, and because the parties'

MEADOWS, ICHTER & TRIGG

The Honorable Janet F. King
April 23, 2002
Page 6

acknowledge the burden on counsel, as well as the Court, the
parties respectfully request three separate deadlines for any
motions for summary judgment, as well as three (3) separate
deadlines for any responsive pleadings.

The parties offer the following proposed schedule:

(a)   Defendants shall file the following Motions For
      Summary Judgment no later than June 21, 2002:

      Plaintiff Onoo;
      Plaintiff Walker; and
      Plaintiff Norris.

(b)   Defendants shall file the following Motions For
      Summary Judgment no later than July 11, 2002:

      Plaintiff Reeves;
      Plaintiff Worthen; and
      Plaintiff Davis.

(c)   Defendants shall file the following Motions For
      Summary Judgment no later than July 31, 2002:

      Plaintiff Speight;
      Plaintiff Easterling;
      Plaintiff Patterson; and
      Plaintiff Saengsiphan.

Furthermore, because the Court has consolidated these cases
for discovery, and because many of the facts are relevant to all
of Plaintiffs' claims, Plaintiffs request the Court's permission
to file a Consolidated Statement of Material Facts to Which
Genuine Issues Exist, as well as a comprehensive brief in
opposition to all motions for summary judgment.  We believe this
will also ease the burden of the Court in resolving some of the
issues that relate to all of the cases by having one
comprehensive statement of facts as well as one comprehensive
overview of the law pertinent to every Plaintiff's case.

In this regard, Plaintiffs anticipate needing a substantial
modification of the page requirements, and thus, request the
Court to allow them approximately 50-70 pages in their

Meadows, Ichter & Trigg

The Honorable Janet F. King
April 23, 2002
Page 7

Consolidated Statement of Facts and approximately 30-35 pages
for legal argument in their consolidated brief.  Plaintiffs, of
course, will also file separate responses to the extent
necessary regarding facts and law specific to their individual
cases, and we would require 15 pages per Plaintiff for that
purpose.

**By Defendants:**

     Defendants agree that it would be beneficial to have
separate, tiered deadlines for the filing of motions for summary
judgment in these tend cases.  Each of these cases involves
different individuals, each with different and unique factual
allegations and claims.  Further, discovery in this case is
expected to be very active with the parties conducting
depositions that will be necessary for use in summary judgment
motions, and the efforts that both parties may also be expending
at the same time on expert discovery (see No. 4, above),
Defendants propose the following schedule for the deadlines for
filing summary judgment motions:

          July 15        Plaintiffs Walker, Onoo and Norris
          August 13      Plaintiffs Davis, Worthen & Reeves
          September 9    Plaintiffs Speight, Easterling, Patterson &
                         Saengsiphan

     Further, as each of these ten cases was consolidated solely
for the purposes of discovery, and as each of these cases
involves different individuals, each with different and unique
factual allegations and claims, Defendants do not believe that a
joint, consolidated brief or any other joint consolidated
pleading regarding summary judgment would be appropriate in
these cases.  Each of these cases must stand or fall on their
own individual merit (or lack thereof) at summary judgment.

     6.    **Stipulation as to Authenticity of Documents:**
           **Talent Evaluations**

     Defendants are willing to review documents identified by
Plaintiffs for which Plaintiffs would like Defendants to
stipulate to their authenticity.  Defendants will discuss these
maters with Plaintiffs.  If no agreement is reached between the
parties regarding these documents, challenges to authenticity

The Honorable Janet F. King
April 24, 2002
Page 8

can then be addressed by the Court at the appropriate time.  At
this time, however, Defendants believe this matter is premature
and not necessary for the Rule 16 Conference.

### 7.  **Additional Plaintiffs:**

**By Plaintiffs:**

Counsel for Plaintiffs recently filed a suit against the
same Defendants on behalf of an African-American wrestler named
Ernest Miller, Civil Action File No. _____.  Counsel for
Plaintiffs anticipate possibly filing one additional suit on
behalf of another African-American wrestler.

Plaintiffs respectfully request the Court to consolidate
these additional cases and to allow the parties to use the
discovery conducted to date for these additional cases.

**By Defendants:**

While Defendant would be willing to consider consolidation
of the new lawsuits mentioned by Plaintiffs, Defendants believe
it is premature to discuss any such consolidation at this time.
Neither case has been filed, and Defendants have not even seen a
draft Complaint in one of the cases, nor has the Plaintiff in
that case even been identified.  Defendants assume that any new
case would have its own appropriate schedule under this Court's
Orders and Local Rules.  Any use of the discovery taken in the
ten existing cases can be discussed by the parties at the proper
time, and will of course be governed by the Federal Rules of
Civil Procedure and this Court's Orders, as appropriate.  Thus,
discussion about consolidation of two yet-to-be filed cases
appears unnecessary for this Rule 16 Conference.

### 8.  **Adding TBS, Inc. as a Party:**

**By Plaintiffs:**

On April 10, 2002, Plaintiffs filed a Motion for Leave of
Court to amend their Complaint in order to add TBS, Inc. as a
party to this lawsuit.  The parties, therefore, would like to
discuss the extent to which this pending motion will affect the
remaining aspects of this litigation.

MEADOWS, ICHTER & TRIGG

The Honorable Janet F. King
April 23, 2002
Page 9

**By Defendants:**

Defendants oppose Plaintiffs motions to add TBS, Inc. as a party in these cases and will shortly be filing their responses to Plaintiffs' motions.  Pending Defendants' responses and this Court's ruling on Plaintiffs' motions, this issue does not appear to be ripe for discussion at this Rule 16 Conference.

We jointly thank the Court for the opportunity to have the Rule 16 Scheduling Conference, and look forward to meeting with you on April 25, 2002 at 9:30 a.m.

With best regards.

Very truly yours,

Cary Ichter by cjg
On Behalf of the Plaintiffs

Evan Pontz by cjg w/express permission
On Behalf of the Defendants

CJG/cim

Enclosures

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Walker v. World Championship Wrestling, Inc., Turner Sports,
     Inc., Civ. File No. 1:00-CV-0367-CC
Onoo v. World Championship Wrestling, Inc., Turner Sports,
     Inc., Civ. File No. 1:00-CV-0368-CC
Norris v. World Championship Wrestling, Inc., Turner Sports,
     Inc., Civ. File No. 1:00-CV-0369-CC
Easterling v. World Championship Wrestling, Inc. and Turner
     Sports, Inc., Civ. File No. 1-00-CV-1715-CC
Davis v. World Championship Wrestling, Inc. and Turner
     Sports, Inc., Civ. File No. 1-00-CV-1716-CC
Worthen v. World Championship Wrestling, Inc. and Turner
     Sports, Inc., Civ. File No. 1-00-CV-1717-CC
Speight v. World Championship Wrestling, Inc. and Turner
     Sports, Inc., Civ. File No. 1-00-CV-1718-CC
Saengsiphan v. World Championship Wrestling, Inc. and Turner
     Sports, Inc., Civ. File No. 1-00-CV-1719-CC
Reeves v. World Championship Wrestling, Inc. and Turner
     Sports, Inc., Civ. File No. 1-00-CV-1720-CC
Claude Patterson v. World Championship Wrestling, Inc.,
     Turner Sports, Inc. and Turner Entertainment Group,
     Inc., Civ. File No. 1:01-CV-1152-CC

**DEFENDANT UNIVERSAL WRESTLING CORPORATION'S RESPONSES AND
OBJECTIONS TO PLAINTIFFS' CONSOLIDATED FIRST INTERROGATORIES AND
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS
WORLD CHAMPIONSHIP WRESTLING, INC. AND TURNER SPORTS, INC.**

Pursuant to Rules 33 and 34 of the Federal Rules of Civil

Procedure, Defendant Universal Wrestling Corporation ("UWC")

(formerly known as World Championship Wrestling, Inc. ("WCW"))

objects and responds to Plaintiffs' Consolidated First

Interrogatories And First Request For Production Of Documents To

Defendants World Championship Wrestling, Inc. and Turner Sports,

RESPONSE TO INTERROGATORY NO. 2.

In addition to its General Objections, UWC objects to Interrogatory No. 2 on the grounds that it is overbroad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  UWC further objects to Interrogatory No. 2 on the grounds that it is unduly burdensome, harassing and oppressive.  Subject to and without waiving its objections, UWC states that Plaintiff Bobby Walker filed a complaint with the Equal Employment Opportunity Commission (EEOC) and a lawsuit in the United States Federal District Court for the Northern District of Georgia in Atlanta in 1997.  Further, Plaintiffs Walker, Onoo, Norris, Davis, Saengsiphan, Reeves, and Patterson, along with Pezavan Whatley, William Boulware and Tony Carr (who have filed lawsuits that are related to Plaintiffs' Complaints) filed complaints with the EEOC in 2000 and lawsuits in the United States Federal District Court for the Northern District of Georgia in Atlanta in 2000 and 2001.  Plaintiffs and their counsel are fully aware of the contents and details of these complaints and lawsuits.

INTERROGATORY NO. 3.     Please identify (following the requirements set forth in Instruction No. 8) the total number of wrestlers with whom Defendant WCW and/or Defendant Turner Sport [sic] have entered into wrestling contracts of any kind from January 1995 until the present.  For each such wrestler, please provide the following information:
      (a)  His or her legal and professional name;
      (b)  His or her racial background, (i.e. African or African-American, Hispanic/Latino or Hispanic/Latino American,

Asian or Asian-American, Caucasian or Caucasian-American, or Other (please provide additional information regarding the racial background of any individual categorized as "Other"));

(c)    The number of matches in which he or she performed on live television;

(d)    The outcome (e.g. win, lose or other) of each WCW Monday Nitro, Thunder and/or Pay-Per View match in which he or she performed from January 1995 through the present;

(e)    His or her annual compensation for each year from January 1995 until the present;

(f)    The merchandising revenues he or she received for each quarter from January 1995 until the present; and

(g)    Whether or not he or she was terminated and/or released during 1999.

## RESPONSE TO INTERROGATORY NO. 3.

In addition to its General Objections, UWC objects to Interrogatory No. 3 on the grounds that it is overbroad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. UWC further objects to Interrogatory No. 3 on the grounds that it is unduly burdensome, harassing and oppressive.

**INTERROGATORY NO. 4.**    Please identify (following the requirements set forth in Instruction No. 8) each individual at Defendant WCW and/or Turner Sports that had any responsibility from January 1995 until the present for booking matches and/or contributing to storylines and/or determining whether/when to schedule a particular Performer to perform, and/or determining the roles particular Performers played in wrestling matches/performances. For each such individual please provide the titles and dates associated with his or her employment in the position in which he or she had the authority to contribute to such determinations and his or her racial background, (i.e. African or African-American, Hispanic/Latino or Hispanic/Latino American, Asian or Asia n-American, or Caucasian or Caucasian-American).

**RESPONSE TO INTERROGATORY NO. 6.**

In addition to its General Objections, UWC objects to
Interrogatory No. 6 on the grounds that it is overbroad and seeks
information that is neither relevant nor reasonably calculated to
lead to the discovery of admissible evidence.  UWC further
objects to Interrogatory No. 6 on the grounds that it is unduly
burdensome, harassing and oppressive, and seeks information that
is obtainable through more convenient, less burdensome discovery
methods.

**INTERROGATORY NO. 7.**   Please identify (following the
requirements set forth in Instruction No. 8) each and every
individual who attended a "try out" at the Power Plant (or its
predecessor) from January 1995 until the present.  For each such
individual, please provide the dates of his or her "try-out" and
his or her racial background, (i.e., African or African-American,
Hispanic/Latino or Hispanic/Latino-American, Asian or Asian-
American, Caucasian or Caucasian-American or Other (please
provide additional information regarding the racial background of
any individual categorized as "Other")).

**RESPONSE TO INTERROGATORY NO. 7.**

In addition to its General Objections, UWC objects to
Interrogatory No. 7 on the grounds that it is overbroad and seeks
information that is neither relevant nor reasonably calculated to
lead to the discovery of admissible evidence.  UWC further
objects to Interrogatory No. 7 on the grounds that it is unduly
burdensome, harassing and oppressive.

**INTERROGATORY NO. 8.**   Please identify (following the
requirements set forth in Instruction No. 8) each and every
individual who trained at the Power Plant (or its predecessor)

from January 1995 until the present.  For each such individual,
please provide the dates he or she trained at the Power Plant,
his or her racial background, (i.e. African or African-American,
Hispanic/Latino or Hispanic/Latino-American, Asian or Asian-
American, Caucasian or Caucasian-American or Other (please
provide additional information regarding the racial background of
any individual categorized as "Other")), and whether Defendant
WCW and/or Defendant Turner Sports offered a wrestling contract
(whether classified as an "employment," "contractor," or
"independent contractor agreement") to him or her.

**RESPONSE TO INTERROGATORY NO. 8.**

     In addition to its General Objections, UWC objects to

Interrogatory No. 8 on the grounds that it is overbroad and seeks

information that is neither relevant nor reasonably calculated to

lead to the discovery of admissible evidence.  UWC further

objects to Interrogatory No. 8 on the grounds that it is unduly

burdensome, harassing and oppressive.

**INTERROGATORY NO. 9.**     For the period beginning January 1995
until the present, please identify (following the requirements
set forth in Instruction No. 8) each and every individual at
Defendant WCW and/or Defendant Turner Sports that had any
responsibility for determining to which Performers Defendant WCW
and/or Defendant Turner Sports would offer a wrestling contract
(whether classified as an "employment," "contractor," or
"independent contractor agreement").

**RESPONSE TO INTERROGATORY NO. 9.**

     In addition to its General Objections, UWC objects to

Interrogatory No. 9 on the grounds that it is overbroad and seeks

information that is neither relevant nor reasonably calculated to

lead to the discovery of admissible evidence.  UWC further

objects to Interrogatory No. 9 on the grounds that it is unduly

burdensome, harassing and oppressive.



COPY

WORK COPY

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Walker v. World Championship Wrestling, Inc., Turner
    Sports, Inc., Civ. File No. 1:00-CV-0367-CC
Onoo v. World Championship Wrestling, Inc., Turner Sports,
    Inc., Civ. File No. 1:00-CV-0368-CC
Norris v. World Championship Wrestling, Inc., Turner
    Sports, Inc., Civ. File No. 1:00-CV-0369-CC
Easterling v. World Championship Wrestling, Inc. and Turner
    Sports, Inc., Civ. File No. 1:00-CV-1715-CC
Davis v. World Championship Wrestling, Inc. and Turner
    Sports, Inc., Civ. File No. 1:00-CV-1716-CC
Worthen v. World Championship Wrestling, Inc. and Turner
    Sports, Inc., Civ. File No. 1:00-CV-1717-C
Speight v. World Championship Wrestling, Inc. and Turner
    Sports, Inc., Civ. File No. 1:00-CV-1718-CC
Saengsiphan v. World Championship Wrestling, Inc. and
    Turner Sports, Inc., Civ. File No. 1:00-CV-1719-CC
Reeves v. World Championship Wrestling, Inc. and Turner
    Sports, Inc., Civ. File No. 1:00-CV-1720-CC

**DEFENDANT TURNER SPORTS, INC.'S REPONSE TO PLAINTIFFS'
CONSOLIDATED SECOND INTERROGATORIES AND THIRD REQUEST FOR
PRODUCTION OF DOCUMENTS TO DEFENDANTS WORLD CHAMPIONSHIP
WRESTLING, INC. AND TURNER SPORTS, INC.**

Pursuant to Rules 33 and 34 of the Federal Rules of Civil

Procedure, Defendant Turner Sports, Inc. objects and responds to

Plaintiffs' Consolidated Second Interrogatories And Third

Request For Production Of Documents To Defendants World

Championship Wrestling, Inc. and Turner Sports, Inc.

("Plaintiffs' Second Interrogatories and Third Document

Requests") as follows:

4.

Turner Sports objects to Plaintiffs' Second Interrogatories and Third Document Requests to the extent that they purport to require the production of documents which are not in Turner Sports's possession, custody or control, or which have not yet come into existence.

5.

Turner Sports objects to Plaintiffs' Second Interrogatories and Third Document Requests to the extent that they purport to require Turner Sports to produce documents for inspection or copying at any location or time not agreed to by Turner Sports.

6.

Turner Sports objects to Plaintiffs' Second Interrogatories and Third Document Requests to the extent that they exceed the permissible number of parts pursuant to Rule 33(a) of the Federal Rules of Civil Procedure.

**RESPONSES AND OBJECTIONS TO SPECIFIC INTERROGATORIES**

**INTERROGATORY NO. 1.**     For each of the fiscal years 1995 through 2001, identify the ten (10) WCW Performers who are known or believed by WCW to be Caucasian who received the largest amount of income under the terms of any WCW merchandising or licensing agreement; with respect to each, provide the amount that was paid during each such year.

**RESPONSE TO INTERROGATORY NO. 1.**

In addition to its General Objections, Turner Sports objects to Interrogatory No. 1 on the grounds that it is overbroad in time and scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Turner Sports further objects to Interrogatory No. 1 on the grounds that it is harassing, oppressive, and unduly burdensome, in that Turner Sports does not have and did not maintain information about Independent Contractor Performers providing services to WCW. Subject to and without waiving its objections, Turner Sports states that it has no information responsive to this interrogatory.

**INTERROGATORY NO. 2.**     For each of the fiscal years 1995 through 2001, identify the ten (10) WCW Performers who are known or believed by WCW to be African-American who received the largest amount of income under the terms of any WCW merchandising or licensing agreement; with respect to each, provide the amount that was paid during each such year.

**RESPONSE TO INTERROGATORY NO. 2.**

In addition to its General Objections, Turner Sports objects to Interrogatory No. 2 on the grounds that it is overbroad in time and scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Turner Sports further objects

to Interrogatory No. 2 on the grounds that it is harassing,

oppressive, and unduly burdensome, in that Turner Sports does

not have and did not maintain information about Independent

Contractor Performers providing services to WCW.  Subject to and

without waiving its objections, Turner Sports states that it has

no information responsive to this interrogatory.

**INTERROGATORY NO. 3.**      For each of the fiscal years 1995

through 2001, identify the ten (10) WCW Performers who are known

or believed by WCW to be Hispanic/Latino who received the

largest amount of income under the terms of any WCW

merchandising or licensing agreement; with respect to each,

provide the amount that was paid during each such year.

**RESPONSE TO INTERROGATORY NO. 3.**

In addition to its General Objections, Turner Sports

objects to Interrogatory No. 3 on the grounds that it is

overbroad in time and scope and seeks information that is

neither relevant nor reasonably calculated to lead to the

discovery of admissible evidence.  Turner Sports further objects

to Interrogatory No. 3 on the grounds that it is harassing,

oppressive, and unduly burdensome, in that Turner Sports does

not have and did not maintain information about Independent

Contractor Performers providing services to WCW.  Subject to and

without waiving its objections, Turner Sports states that it has

no information responsive to this interrogatory.

**INTERROGATORY NO. 4.**    For each of the fiscal years 1995 through 2001, identify the ten (10) WCW Performers who are known or believed by WCW to be Asian/Asian-American who received the largest amount of income under the terms of any WCW merchandising or licensing agreement; with respect to each, provide the amount that was paid during each such year.

**RESPONSE TO INTERROGATORY NO. 4.**

In addition to its General Objections, Turner Sports objects to Interrogatory No. 4 on the grounds that it is overbroad in time and scope and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Turner Sports further objects to Interrogatory No. 4 on the grounds that it is harassing, oppressive, and unduly burdensome, in that Turner Sports does not have and did not maintain information about Independent Contractor Performers providing services to WCW.  Subject to and without waiving its objections, Turner Sports states that it has no information responsive to this interrogatory.

**RESPONSES AND OBJECTIONS TO SPECIFIC DOCUMENT REQUESTS**

**REQUEST FOR PRODUCTION NO. 1.** Please produce for inspection and copying documents that identify the amount of income paid under the terms of any merchandising or licensing agreement to each of the Performers identified in your responses to Interrogatory Nos. 1 through 3 for each of the fiscal years 1995 through 2001.

# MEADOWS, ICHTER & TRIGG

### ATTORNEYS AT LAW
#### A PROFESSIONAL CORPORATION

EIGHT PIEDMONT CENTER, SUITE 300
3525 PIEDMONT ROAD, N.E.
ATLANTA, GEORGIA 30305
TELEPHONE: 404-261-6020
FACSIMILE: 404-261-3656
http://www.mitlaw.com


April 3, 2002


**VIA FACSIMILE AND U.S MAIL**

Evan H. Pontz
Troutman Sanders LLP
Bank of America Plaza
600 Peachtree Street, N.E., Suite 6200
Atlanta, Georgia 30308-2218

Re:  Davis v. World Championship Wrestling, Inc. and Turner Sports, Inc.,
Civ. File No. 1-00-CV-1716-CC;
Saengsiphan v. World Championship Wrestling, Inc. and Turner
Sports, Inc., Civ. File No. 1-00-CV-1719-CC;
Speight v. World Championship Wrestling, Inc. and Turner Sports,
Inc., Civ. File No. 1-00-CV-1718-CC;
Worthen v. World Championship Wrestling, Inc. and Turner Sports,
Inc., Civ. File No. 1-00-CV-1717-CC;
Reeves v. World Championship Wrestling, Inc. and Turner Sports,
Inc., Civ. File No. 1-00-CV-1720-CC;
Easterling v. World Championship Wrestling, Inc. and Turner Sports,
Inc., Civ. File No. 1-00-CV-1715-CC
Onoo v. World Championship Wrestling, Inc. and Turner Sports, Inc.,
Civ. File No. 1:00-CV-0368-CC
Norris v. World Championship Wrestling, Inc. and Turner Sports, Inc.,
Civ. File No. 1:00-CV-0369-CC
Walker v. World Championship Wrestling, Inc. and Turner Sports,
Inc.., Civ. File No. 1:00-CV-0367-CC
Patterson v. World Championship Wrestling, Inc., Turner Sports, Inc.
and Turner Entertainment Group, Inc., Civ. File No. 1:01-CV-1152-CC

Dear Evan:

I am writing to confirm the agreements we reached in our discovery
conference yesterday afternoon. Our specific agreements are outlined on the pages
that follow.

Evan H. Pontz, Esq.
April 3, 2002                                              MEADOWS, ICHTER & TRIGG
Page 2

## Documents that were the subject of our draft motion to compel – previously discussed on January 23, 2002 and addressed in my letter of February 28, 2002.

### Request for Production No. 52

In my letter of February 28, 2002, I indicated that we would like to review all of the World Championship Wrestling, Inc. ("WCW") financial information that you referred to during our January 23, 2002 discovery conference and in your letter of February 11, 2002. I also indicated that we would review these documents wherever they are kept in the regular course of business.

In our discovery conference yesterday afternoon, you indicated that one obstacle that you face in allowing us to review these documents where they are kept in the regular course of business is your need to review the documents for privilege and responsiveness prior to producing them. You also indicated that "many dozen" boxes of documents would be involved in such a production.

You agreed to determine your ability to produce the subset of WCW financials that involves or relates to Turner Sports, Inc. ("Turner Sports") or Turner Entertainment Group, Inc. ("TEG").

### Request for Production No. 54

You indicated that it might be possible for WCW to produce all the documents that it received from pay-per-view distributors for the time period beginning January 1, 2000 and ending December 31, 2000. You agreed to try to determine the feasibility of such a production. You also agreed to determine an appropriate subset of these documents that WCW would be able to produce without an undue burden, whether it be a subset of documents categorized by name, or some other category.

### Request for Production Nos. 64-66 & 71

You stated that you cannot produce all the responsive documents for all of the people listed in my February 5, 2002 correspondence because WCW did not maintain name-specific files for some of these individuals. I reminded you that the list was generated in response to your indication that it would be impossible to produce all responsive documents for directors, manager and officers, but that it would be feasible to produce responsive documents for specific individuals.

You agreed to determine for which of the individuals listed in my February 5, 2002 correspondence WCW maintained name-specific files, such that responsive documents could be produced without imposing an undue burden.

Evan H. Pontz, Esq.
April 3, 2002                                                    MEADOWS, ICHTER & TRIGG
Page 3

Request for Production Nos. 67-68, 73

You indicated that you do not believe that there are any contracts or written
agreements between WCW and Turner Sports. You agreed to confirm this in
writing, if you have not already done so.

With respect to documents in WCW's files regarding "Spring Breakout," you
stated that you had determined that more responsive documents exist than you had
originally contemplated, but that you did not know the specific amount or whether
any category could be produced without burden. You agreed to determine the
volume of responsive documents and advise me as to the manner in which they
could be produced without burden.

You stated that you have reviewed Turner Sports' and WCW's articles of
incorporation and corporate by-laws and neither references the other entity. You
agreed to confirm this in writing.

Request for Production Nos. 88-90 of Plaintiffs' Consolidated First Interrogatories
and Request for Production of Documents to Defendants WCW and Turner Sports

You indicated that you believe that any responsive documents have already
been produced. You agreed to confirm this in writing.

Exhibit 3 to Harrison Norris Deposition

You stated that you have discussed the apparently "missing" portions of this
document with Cary several times and that you are attempting to locate the
complete document, if such a document exists. In the event that you find this
document, you agreed to contact us immediately.

Request for Production No. 1 of Plaintiffs' Consolidated First Interrogatories and
Request for Production of Documents to Defendants WCW and Turner Sports

This request seeks contract information for Performers, which was defined as
all "on-air talent that worked for Defendant WCW, including wrestlers, managers,
and dancers, and/or all individuals that attended a "try-out" or trained at the Power
Plant." You have produced responsive information for some of these individuals,
but there are still a number of individuals for whom the request is outstanding.

I agreed to provide you with a list of the individuals about which we want
responsive information, specifying those whom we are certain were Performers and
those whom we do not have sufficient information to determine whether

Evan H. Pontz, Esq.
April 3, 2002
Page 4

MEADOWS, ICHTER & TRIGG

Defendants considered them to be Performers. I also informed you that we will be serving our Fifth Request for the Production of Documents, which will cover all of the individuals about whose status we are unsure. Our lists are as follows:

<u>Performers</u>

1.    Johnny "Attitude";
2.    Johnny "The Bull";
3.    Anne-Marie Crooks;
4.    Billy Daley pka Billy Silverman;
5.    Johnny Deveaux;
6.    "Glacier";
7.    Dale Hamberg;
8.    Bret Hammer;
9.    Jimmy Hart;
10.   Mickey Jay Henson;
11.   Lash Huffman;
12.   Mark Johnson;
13.   Mark "Millennium" (you indicated that this was the same person as Mark Jindrak – please confirm);
14.   Craig O'Malley;
15.   Colonel Parker;
16.   Charles Robinson;
17.   Virgil Runnels pka Dusty Rhodes;
18.   Vince Russo;
19.   "The Wall"
20.   "Horse Shoe"
21.   Johnny Snakovsky pka Johnny Boone; and
22.   "Spiderman."

<u>Uncertain as to Defendants' Determination of Status as Performer – covered by Fifth Request for Production of Documents</u>

1.    Randy Anderson;
2.    Bill Banks;
3.    Michelle Baynes;
4.    Bill Busch;
5.    Casey Collins;
6.    Billy Daley;
7.    Scott Dickinson;
8.    Lenita Ericson;
9.    Ed Ferrara;
10.   Ross Forman;

Evan H. Pontz, Esq.
April 3, 2002
Page 5

MEADOWS, ICHTER & TRIGG

11. Jody Hamilton;
12. Gary Juster;
13. Craig Leathers;
14. Sherri Martil;
15. Ben Miller;
16. Paul Orndorff;
17. Tony Schiavone;
18. Brenda Smith;
19. Gail Sparks;
20. Kevin Sullivan;
21. Terry Taylor;
22. Vanderberg; and
23. Tori Wilson.

You agreed to update me regarding your progress on responding to all of the discovery discussed in this letter by April 19, 2002.

We appreciate your continued efforts to resolve these discovery issues. Please contact me with questions or comments.

Very truly yours,

Michelle M. Rothenberg-Williams

MMR/jak

Cc:   Cary Ichter, Esq.
       Charles J. Gernazian, Esq.
       Kelly Jean Beard, Esq.
       Fay C. Schultz



# EXHIBIT / ATTACHMENT

## B

(To be scanned in place of tab)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROBERT L. ROSS, JR.,      :
                          :
          Plaintiff,      :
                          :
vs.                       :    CIVIL NO. 1:93-CV-1206-JEC
                          :
WORLD CHAMPIONSHIP WRESTLING, :
INC.,                     :
                          :
          Defendant.      :

## ORDER

The above entitled action is presently before the Court on the Magistrate Judge's Report and Recommendation [15] granting defendant's Motion For Summary Judgment [11] and denying as moot plaintiff's Motion to Extend Time To April 25, 1994 To Respond To Defendant's Motion For Summary Judgment [12]. Plaintiff has filed no objection(s) to the Magistrate Judge's Report and Recommendation. The Court has reviewed the record and arguments of the parties and concludes that the Magistrate Judge's Report and Recommendation should be received with approval and adopted as the opinion and order of the Court.

ACCORDINGLY, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation [15] **GRANTING** defendant's Motion For Summary Judgment [11] and **DENYING AS MOOT** plaintiff's Extension Of Time [12].

SO ORDERED, this 17 day of October, 1994.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

ENTERED ON DOCKET

OCT 21 1994

U.S.T. CLERK

BY        DEPUTY CLERK

2

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MAY 17 1994

LUTHER D. THOMAS, Clerk

By: _____
Deputy Clerk

ROBERT ROSS, JR.,            :    CIVIL ACTION

        Plaintiff,           :    NO. 1:93-CV-1206-JEC

    vs.                      :    Adopted by Judge Carnes

WORLD CHAMPIONSHIP WRESTLING, INC.,  :    via order dated

        Defendant.          :    10-19-94


                ORDER FOR SERVICE OF REPORT AND RECOMMENDATION


        Attached is the report and recommendation of the United
States  Magistrate Judge made in this action in accordance
with 28 U.S.C. § 636 and this Court's Local Rule 260-2.  Let
the same be filed and a  copy, together with a copy of this
Order, be served upon counsel for the parties.


        Pursuant  to 28 U.S.C. § 636(b)(1), each party may file
written objections, if any, to the report and recommendation
within  ten (10) days of the receipt of this Order.  Should
objections be filed, they shall specify with particularity the
alleged error or errors made (including reference by page
number to the transcript  if applicable) and shall be served
upon the opposing party.  The party filing objections will be
responsible for obtaining and filing the transcript of any
evidentiary hearing for review by the district court.  If no


                                1

objections are filed, the report and recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983), cert. denied, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984).

The Clerk is directed to submit the report and recommendation with objections, if any, to the district court after expiration of the above time period.

IT IS SO ORDERED, this _____ day of May, 1994.

WILLIAM L. HARPER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MAY 1 7 1994

LUTHER D. THOMAS, Clerk

By: _____ Deputy Clerk

ROBERT ROSS, JR.,                    :    CIVIL ACTION

    Plaintiff,                       :    NO. 1:93-CV-1206-JEC

    vs.                              :

WORLD CHAMPIONSHIP WRESTLING, INC., :

    Defendant.                       :

## MAGISTRATE JUDGE'S ORDER, REPORT AND RECOMMENDATION

The above-styled employment discrimination action is presently before the undersigned Magistrate Judge for consideration of defendant's motion for summary judgment. For the reasons set forth below, the undersigned Magistrate Judge hereby RECOMMENDS that defendant's motion for summary judgment be GRANTED.

Defendant filed its motion for summary judgment on March 25, 1994. (Docket No. 11). In a letter dated March 30, 1994, the Clerk of Court notified plaintiff of the filing of defendant's summary judgment motion, of his duty to respond, and of the possible consequences of a failure to respond. On April 14, 1994, plaintiff filed a motion for an extension of time within which to respond to defendant's motion, seeking an extension through and including April 25, 1994. (Docket No. 12). Without the benefit of a ruling on this motion,

plaintiff filed an untimely response to defendant's motion for summary judgment on April 26, 1994. (Docket No. 13). Defendant has subsequently filed a reply brief. (Docket No. 14).

As plaintiff's response was not filed until April 26, 1994, this response would be untimely even if the court were to grant plaintiff's motion for an extension of time. Accordingly, plaintiff's motion for an extension of time is hereby DENIED as moot.

Local Rule 220-1(b)(1) provides in relevant part that "[f]ailure to file a response [to a motion] shall indicate that there is no opposition to the motion." Accordingly, as no timely response was filed to defendant's motion for summary judgment, the undersigned Magistrate Judge deems this motion to be unopposed.

The applicability of Local Rule 220-1(b)(1) in the specific context of a motion for summary judgment was considered by the Eleventh Circuit Court of Appeals in Dunlap v. Transamerica Occidental Life Insurance, 858 F.2d 629 (11th Cir. 1988). In upholding the District Court's grant of summary judgment in favor of defendant, the court noted:

2

In _Simon v. Kroger Company_, 743 F.2d 1544
(11th Cir. 1984) this court upheld the entry of
summary judgment under similar circumstances. The
result in _Simon_ was based upon both a finding that
the summary judgment motion was well supported and
a finding that a local rule in the Northern
District of Georgia--which apparently was the
predecessor to one of these local rules--was
properly applied.

Had the district court based its entry of
summary judgment solely on Local Rule 220-1(b), a
different question would be presented. Local Rule
220-1(b)(1) might well be inconsistent with
Fed.R.Civ.P. 56 if it were construed to mean that
summary judgment could be granted as a sanction for
failure to respond to a motion for summary
judgment. _Cf. Arundar v. DeKalb Cty. School Dist._,
620 F.2d 493 (5th Cir. 1980). In this case,
however, Transamerica's motion was supported by
evidentiary materials of record, and the district
court's orders indicate that the merits of the
motion were addressed.

_Dunlap_, 858 F.2d at 632. _See also, Kinder v. Carson_, 127
F.R.D. 543, 545 (S.D. Fla. 1989).

The proper approach, therefore, given the applicability
of Local Rule 220-1(b)(1) to the present case is succinctly
stated by the court in _Kelly v. United States_, 924 F.2d 355,
358 (1st Cir. 1991):

3

In the precincts patrolled by Rule 56, the
decision to sit idly by and allow the summary
judgment proponent to configure the record is
likely to prove fraught with consequence. This
case is no exception. Given appellant's failure to
contest either the government's affidavits or the
Statement, the jurisprudence of both Rule 56 and
Local Rule 18 demands that the movant's version of
the facts be taken as true.

Of course, the district court was still
obliged to consider the motion on its merits, in
light of the record as constituted, in order to
determine whether judgment would be legally
appropriate. See Mendez v. Banco Popular, 900 F.2d
4, 7 (1st Cir. 1990); Jaroma v. Massey, 873 F.2d
17, 19-20 (1st Cir. 1989) (per curiam); see
generally Amsden, 904 F.2d at 753 (court of appeals
may reverse a grant of summary judgment, regardless
of uncontroverted nature of facts, if "the district
court erred in expounding the law").


See also, Anchorage Associates v. Virgin Islands Board of Tax
Review, 922 F.2d 168 (3rd. Cir. 1990); Mendez v. Banco Popular
de Puerto Rico, 900 F.2d 4, 7-8 (1st. Cir. 1990).


Additionally, the procedural deficiency of plaintiff's
response likewise compels this court to accept defendant's
statement of material facts not in dispute as true for
purposes of ruling on the merits of defendant's motion for

4

summary judgment.   Local Rule 220-5(b)(2) of the Local Rules of Practice for the United States District Court for the Northern District of Georgia provides:

> The respondent to a motion for summary judgment shall attach to his response a separate and concise statement of material facts, numbered separately, to which he contends there exists a genuine issue to be tried.   Response should be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in his statement shall be deemed to have been admitted.   The response that a party has insufficient knowledge to admit or deny is not an acceptable response unless the party has complied with the provisions of F.R.Civ.P. 56(f).

Plaintiff's response to defendant's motion for summary judgment is not in compliance with Local Rule 220-5(b)(2). Accordingly, and based upon the untimely nature of this response, the undersigned Magistrate Judge adopts defendant's statement of material facts not in dispute for purposes of resolving the merits of defendant's motion for summary judgment.   These facts are briefly summarized below.

Following plaintiff's honorable discharge from military service, he embarked on a career in professional wrestling.

5

Plaintiff adopted the ring name of "Ranger Ross," and adopted the persona of a decorated war hero.

After some time wrestling in smaller alliances and federations, plaintiff contacted David Crockett, the owner of the National Wrestling Alliance (NWA), regarding the possibility of wrestling within the NWA. At Crockett's urging, plaintiff attended a wrestling school in North Carolina operated by Nelson Royal. Based upon his observations, Royal notified Crockett that plaintiff was qualified to wrestle for the NWA.[1]

In 1988, the NWA was purchased by World Championship Wrestling, Inc. (WCW). In January 1989, plaintiff began to wrestles for WCW. Plaintiff retained the ring name of "Ranger Ross," and continued to use his assumed persona or gimmick. As was true in plaintiff's earlier professional wrestling experiences, plaintiff was required to provide his own equipment and costume at plaintiff's cost.

In this his first tour of duty with WCW, plaintiff received $1,000.00 per week plus an occasional percentage of

---

[1]  Plaintiff had previously attended a wrestling school in Atlanta, Georgia, conducted by a popular former professional wrestler, Thunderbolt Paterson.

AO 72A
(Rev. 8/82)

the gate at his matches.  Plaintiff wrestled approximately 15 to 20 days per month.

In May 1990, plaintiff was released due to budgetary restraints on the part of WCW.  After his first WCW stint ended, plaintiff wrestled briefly in Japan.  In January 1991, plaintiff was contacted by WCW President Jim Herd.  After discussing the matter with Herd, plaintiff agreed to sign a form entitled "WCW Freelance Wrestler/Independent Contractor Agreement."  Plaintiff read and fully understood this document before signing.  This document provided that plaintiff would be engaged as an independent contractor rather than an employee, and would not enjoy any of the benefits afforded to WCW employees.  Furthermore, the document provided that plaintiff, rather than WCW, would be responsible for the payment of taxes on plaintiff's income pursuant to the agreement.  Plaintiff was to be paid $1,500.00 per week according to this agreement.

During the course of his relationship with WCW, plaintiff's primary contact was WCW Consultant Virgil Runnels (a/k/a Dusty Rhodes).  In his position as WCW Consultant, Runnels was responsible for booking and scheduling wrestling events, for evaluating and recruiting wrestling talent, for pre-determining the final outcome of each wrestling match, and

7

determining which wrestler or wrestlers to "push" into the position of heavyweight champion.

Plaintiff's performance of his work as a professional wrestler can be briefly summarized in the following manner. Plaintiff would receive a booking sheet from Runnels announcing the wrestling match's location and date approximately two weeks to 30 days in advance of the scheduled match. Plaintiff was responsible for travel to the wrestling match site, and was responsible for bearing the cost of such travel. On the date of a match, wrestlers would arrive at the venue, change into their wrestling costumes, and await further instructions. The participants were then informed which wrestler would win each match, and what the finishing move or technique for accomplishing the "victory" would be. The wrestlers were free to choreograph the remainder of the wrestling match on their own. Plaintiff and the other professional wrestlers received little if any other supervision in the performance of their duties.

During the spring and summer of 1991, professional wrestling suffered a decline in popularity. Based upon declining profits, WCW decided not to renew several wrestler's independent contractor agreements. Runnels suggested which wrestlers should be allowed to leave based primarily upon

8

their popularity and drawing power.   Rhodes then suggested which wrestlers to include to WCW President Herd.   Rhodes specifically found that plaintiff lacked the charisma and ability to generate significant fan interest or profit for WCW.   Accordingly, Runnels included plaintiff's name on the list of recommended non-renewals.   Runnels suggestions were accepted by Herd, and plaintiff's contract or agreement expired in July 1991.

In all, 14 wrestlers' independent contractor agreements were not renewed during the summer of 1991.  Plaintiff was the only African American included within this list.  At the time of his discharge, plaintiff received compensation at a higher rate than 10 of the other wrestlers whose contracts were allowed to expire.

During the period of plaintiff's association with WCW, defendant employed approximately 334 male wrestlers.  The vast majority (approximately 300) of these male wrestlers were white.   Plaintiff's rate of compensation was higher than approximately 278 of these other professional wrestlers.

Plaintiff was not "pushed" into the position of heavyweight champion by Runnels and other WCW agents based upon their determination that he lacked the charisma and

9

ability to generate widespread interest in his matches.  It was plaintiff's deficiency in these areas which primarily separated him from three individuals who were allowed to claim the title of heavyweight champion during approximately the same time period.  Of these three individuals, two (Rick Flair and Lex Lugar) were white, while the remaining individual (Ron Simmons) was black.

Runnels actually enlisted plaintiff's aid in pushing Simmons into the position of heavyweight champion.  Plaintiff was portrayed as conditioning Simmons through military training thereby preparing him for an "assault" on the heavyweight championship.

After exhausting his administrative remedies, plaintiff filed his complaint in the above-styled employment discrimination action on June 1, 1993.  (Docket No. 1).  Plaintiff's complaint was premised solely upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Docket No. 1, ¶ 1) (See also, Plaintiff's Answer to Mandatory Interrogatories, Docket No. 2, ¶ 2, which identifies Title VII, albeit incorrectly, as 28 U.S.C. § 2000, et seq.). Within the framework of Title VII, plaintiff leveled the following charges against defendant:

10

a)   Created a "glass ceiling" for non-white employees and independent contractors on hiring and promotional policies to positions of World Championship Wrestler;

b)   Created a practice and/or unwritten policy of putting non-white employees and independent contractors into the role of subsidiary employment or other position, and without concomitant salary, commission, bonus and title advances;

c)   Promoted white employees and independent contractors on a regular basis to higher titles, salaries, commissions and bonuses over non-white employees and independent contractors of longer employment with Defendant, higher performance achievements, better personal skills and management abilities;

d)   Denied non-white employees interview (and thus promotion) opportunities on a regular basis; and

e)   Replaced non-white employees with equal to or less qualified whites when a white employee for the position could be located and installed.

(Docket No. 1, ¶ 6).

Under the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987). On summary judgment, the parties must satisfy the following burdens of proof:

> The party moving for summary judgment bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). An issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio

12

Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89
L.Ed.2d 538 (1986).

Once the moving party meets this initial burden,
summary judgment is then appropriate as a matter of
law against the nonmoving party "who fails to make
a showing sufficient to establish the existence of
an element essential to that party's case, and on
which that party will bear the burden of proof at
trial." Celotex, 477 U.S. at 322, 106 S.Ct. at
2552.   In making a sufficient showing, the
nonmoving party must "go beyond the pleadings and
by ... affidavits, or by the 'depositions, answers
to interrogatories, and admissions on file,'
designate 'specific facts showing that there is a
genuine issue for trial.'" Id. at 324, 106 S.Ct.
at 2553 (quoting Fed. R. Civ. P. 56(e).   In
opposing summary judgment, the nonmoving party may
avail itself of all facts and justifiable
inferences in the record taken as a whole. See
United States v. Diebold, Inc., 369 U.S. 654, 655,
82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).   In
reviewing whether the nonmoving party has met its
burden, the court must stop short of weighing the
evidence and making credibility determinations of
the truth of the matter. Anderson, 477 U.S. at
255, 106 S.Ct. at 2513.   Instead, "[t]he evidence
of the non-movant is to be believed, and all
justifiable inferences are to be drawn in his
favor." Id. (citing Adickes v. S.H. Kress & Co.,
398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26
L.Ed.2d 142 (1970).   If, so viewed, a rational
trier of fact could find a verdict for the

13

nonmoving party under the substantive evidential standard, the nonmoving party can defeat summary judgment. <u>Id</u>. 477 U.S. at 252, 106 S.Ct. at 2512.

<u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F.2d 994, 998-9 (11th Cir. 1992).

In order to fall within the statutory jurisdiction of Title VII, alleged discriminatory conduct must take place within the employer/employee relationship. Specifically, an aggrieved individual may only proceed under Title VII where that individual is an employee rather than an independent contractor. <u>See, e.g.</u>, <u>Wilde v. County of Kandiyohi</u>, 15 F.3d 103, 104 (8th Cir. 1994); <u>Cobb v. Sun Papers, Inc.</u>, 673 F.2d 337 (11th Cir. 1982), <u>cert. denied</u>, 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982).

In order to determine whether a particular individual is an employee or an independent contractor, courts are to employ common law principles of agency. <u>See</u>, <u>Cobb</u>, 673 F.2d at 341. <u>See also</u>, <u>Nationwide Mutual Insurance Co. v. Darden</u>, 503 U.S. ____, 112 S.Ct. 1344, 117 L.Ed.2d 581, 588-90 (1992). Among the factors to be considered in making this determination are the following: the hiring party's right to control, the level of skill required, the source of equipment and tools, the location of the work, the duration of the relationship between

14

the parties, the right to assign *additional work*, the method of payment, whether the work in question is an essential part of the hiring party's business in general, the provision of employee benefits, the tax status of the parties, and the intent of the parties. <u>Darden</u>, 117 L.Ed.2d at 589-90 (<u>citing</u>, <u>Community for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 751-52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)). The application of these factors to the undisputed facts in the present case creates a somewhat "mixed" result. <u>See</u>, <u>Cobb</u>, <u>supra</u>. After carefully weighing these factors, as discussed below, however, the undersigned Magistrate Judge finds that plaintiff was an independent contractor, and that his complaints of alleged discrimination therefore fall outside of the statutory jurisdiction of Title VII.

As to the level of defendant's *control* over the *means and manner* of plaintiff's performance, the undisputed facts establish that this control was minimal.  Plaintiff was allowed to create his own wrestling persona or gimmick. Furthermore, while the nature of the ending of each match was determined by defendant, plaintiff and his opponent were largely free to choreograph the bulk of the action.  The balance struck between control and independence of action in this case is thus completely compatible with a finding that plaintiff was an independent contractor rather than an

15

employee.  See, e.g., North American Van Lines, Inc. v. NLRB, 869 F.2d 596, 599 (D.C. Cir. 1989).

As to the issue of the skill level required in plaintiff's performance of his duties, plaintiff has testified regarding the fact that he attended two separate professional wrestling schools in order to receive training.  Furthermore, plaintiff admitted that an individual lacking in such training would not be qualified to perform as a professional wrestler. Furthermore, plaintiff stated that defendant required him to be evaluated at the second of these wrestling schools in order to determine whether or not he was qualified for the position. Accordingly, this factor also weighs in favor of a finding that plaintiff was an independent contractor.

Plaintiff admits that with the exception of a rope on one occasion and perhaps one pair of boots, he was solely responsible for the provision of his equipment and costumes at his own expense.  Therefore, this factor weighs in favor of a finding that plaintiff was an independent contractor.

As to the location of plaintiff's work, it is undisputed that defendant informed plaintiff of the location of his various matches.  As defendant controlled the location of

16

plaintiff's work, this factor would tend to weigh against a finding that plaintiff was an independent contractor.

In this case, it is undisputed that plaintiff and defendant's relationship was specifically contracted for a period of six months. This specified period of time for a short duration is consistent with a finding that plaintiff was an independent contractor.

It would not appear that plaintiff had the right or ability to assign his performance to other individuals or assistants. Accordingly, this factor weighs against a finding that plaintiff was an independent contractor rather than an employee. Likewise, the fact that plaintiff was paid a salary, rather than a commission, for the vast majority of his work also tends to weigh against a finding that plaintiff was an independent contractor.

As defendant's sole business is the promotion and performance of professional wrestling matches for profit, the work performed by plaintiff and his fellow grapplers is, of course, essential to defendant's business. The undersigned notes defendant's argument, however, that professional wrestlers often move between federations and alliances and are, in one certain sense, a "fungible good." The undersigned

17

finds ultimately with regard to this factor that it does not weigh heavily toward the conclusion that plaintiff was an independent contractor nor does it suggest that plaintiff was an employee.

The undisputed evidence establishes that plaintiff did not receive any fringe benefits with regard to his relationship with defendant. Furthermore, the agreement entered into between plaintiff and defendant expressly states that plaintiff is not eligible for any benefits provided to defendant's employees. Similarly, plaintiff was responsible for the payment of taxes on money received pursuant to the agreement. Accordingly, the undersigned finds that this factor weighs heavily in favor of a finding that plaintiff was in fact an independent contractor.

Finally, the undersigned considers the question of the party's intent. In the present case, the undisputed evidence inevitably points to the conclusion that both defendant and plaintiff intended to form an independent contractor relationship, and that each party considered the resulting relationship to be, in fact, an independent contractor relationship. Accordingly, the undersigned finds that this factor also weighs heavily in favor of a finding that plaintiff was an independent contractor.

18

As noted above, the application of this common law test to the facts in the present case generates mixed results. Without giving dispositive weight to any particular factor, the undersigned notes that generally the intent of the parties and the level of control over the performance of the individual's work are considered persuasive factors. Based upon the facts of this case, both of these factors point to a finding that plaintiff was an independent contractor. Additionally, the undersigned finds that the balancing of the remaining elements of this test also indicate that plaintiff was an independent contractor.

Accordingly, the undersigned Magistrate Judge finds that plaintiff's relationship with defendant was that of an independent contractor, and that his claims of discriminatory treatment therefore fall outside of the jurisdictional scope of Title VII. Therefore, defendant is entitled to summary judgment in its favor based solely upon this ground.

The undersigned notes, however, that alternative grounds clearly exist in support of this outcome. Specifically, the undersigned finds that plaintiff has failed to meet his burden of producing some evidence which raises a material question of fact as to discriminatory intent on the part of defendant.

19

The basic standards for evaluating a motion for summary judgment have been set forth above. Other standards specific to claims of discrimination under Title VII are essential to an evaluation of defendant's motion on its merits.

It should be noted that conclusory allegations based on mere subjective beliefs do not create a genuine issue of material fact. Carter v. Miami, 870 F.2d 578, 585 (11th Cir. 1989); Ramsey v. Leath, 706 F.2d 1166, 1170 (11th Cir. 1983). See also, Earley v. Champion International Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) (collecting cases). Specifically, in regards to plaintiff's claim under Title VII of the Civil Rights Act of 1964, it is well established that a Title VII plaintiff opposing a motion for summary judgment must present significantly probative evidence on the issue of discrimination to avoid summary judgment. Young v. General Foods Corp., 840 F.2d 825 (11th Cir. 1988), cert. denied, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); Grigsby v. Reynolds Metals Co., 821 F.2d 590 (11th Cir. 1987). Reliance solely upon speculation and unsubstantiated hearsay constitutes a failure to meet this burden. See, e.g., Palucki v. Sears, Roebuck and Co., 879 F.2d 1568 (7th Cir. 1989) ("a party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture"); Benson v. Vermont American Corp., 723 F.Supp. 1439 (M.D. Ala. 1988)

("inadmissible evidence offered in the form of a deposition, cannot be considered by the court"), aff'd without opinion, 874 F.2d 820 (11th Cir. 1989); Williams v. Housing Authority, 709 F.Supp. 1554 (M.D. Fla. 1988) ("the court cannot base direct-evidence analysis on hearsay testimony by plaintiff"), aff'd without opinion, 872 F.2d 434 (11th Cir. 1989).

A Title VII plaintiff may demonstrate discriminatory intent through either direct or indirect evidence.    Direct evidence consists of the actions or remarks of an employer reflecting a discriminatory attitude.   Wall v. Trust Company of Georgia, 946 F.2d 805, 809-10 (11th Cir. 1991); Hill v. Metropolitan Atlanta Rapid Transit Authority, 841 F.2d 1533, 1539 (11th Cir. 1988), modified, 848 F.2d 1522 (11th Cir. 1988).   See also, Bell v. Birmingham Linen Service, 715 F.2d 1552, 1556 (11th Cir. 1983), cert. denied, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984).   Indirect evidence may be demonstrated through the framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). For example, an individual may produce indirect evidence of a discriminatory failure to hire by establishing that he is a member of a protected group and that he "applied for an available position for which [he]

21

was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." <u>Burdine</u>, 450 U.S. at 253.  This framework, however, is flexible, and can be shaped to fit employment practices other than failure to hire.

If a plaintiff presents direct evidence of discrimination, the burden of proof shifts to defendant to establish that it would have reached the identical employment decision absent unlawful considerations. <u>See</u>, <u>Wall</u>, 946 F.2d at 810 (<u>citing</u>, <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).

Conversely, where the plaintiff has established a <u>prima facie</u> case of discrimination through indirect evidence a burden of production shifts to the employer "to articulate some legitimate, non-discriminatory reason for the employee's rejection." <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802.  If the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were merely pretexts for discrimination.  <u>Id</u>. at 804; <u>Wall</u>, 946 F.2d at 809; <u>Perryman v. Johnson Products Co.</u>, 698 F.2d 1138, 1142 (11th Cir. 1983). If the trier of fact rejects defendant's proffered reason as incredible, this rejection, coupled with the elements of

22

plaintiff's <u>prima facie</u> case, may alone support a finding of pretext.  <u>St. Mary's Honor Center v. Hicks</u>, ____ U.S. ____, 113 S.Ct. 2742, 125 L.Ed.2d 407, 61 U.S.L.W. 4782, 4784 (1993).

The undersigned first notes that plaintiff has failed to submit any admissible evidence into the record tending to support his claim of discrimination or tending to discredit the affidavit testimony offered by defendant in support of its motion for summary judgment.  Instead, plaintiff's deposition testimony is littered with admissions that he has little if any actual knowledge regarding the alleged disparities which existed between him and other supposedly similarly situated white professional wrestlers. (Deposition of Robert Lee Ross, Jr., hereinafter Ross Dep., pp. 118, 120, 124, 125-26). Plaintiff admits that no direct evidence of discrimination exists.  (Ross Dep., p. 150).  Additionally, the undisputed affidavit testimony offered by defendant is clearly contrary to plaintiff's vague allegations of disparate treatment. Specifically, this testimony indicates that defendant employed approximately 334 male wrestlers during the time that plaintiff wrestled with the WCW.  Of this number, approximately 300 were white.  Significantly, 278 individuals (the vast majority of them white) earned less compensation

than plaintiff.  (Affidavit of Eric Holman, hereinafter Holman Aff., ¶¶ 5 and 6).

As noted above, this testimony is not refuted by plaintiff.    Instead, plaintiff's untimely response to defendant's motion for summary judgment is entirely devoted to the argument that plaintiff is entitled to proceed to trial on his claims pursuant to 42 U.S.C. § 1981 as well as his pendant state claims. Significantly, none of these claims were raised by plaintiff in his complaint nor referred to in his answer to mandatory interrogatories. Instead, these phantom allegations appear for the first time in plaintiff's untimely response. In sum, the only evidence arguably offered by plaintiff in contradiction to defendant's affidavit testimony are his conclusory allegations during the course of his deposition that defendant engaged in discrimination against black professional wrestlers. The record is devoid, however, of any admissible evidence tending to establish that similarly situated white wrestlers were given favorable treatment.

Assuming arguendo, however, that plaintiff had established sufficient probative evidence of discrimination to raise a material question of fact as to each element of his prima facie case, defendant has clearly discharged its duty to articulate a legitimate, non-discriminatory reason for its

24

actions.  In short, the undisputed testimony establishes that Runnels and Herd jointly made the decision not to renew plaintiff's independent contractor agreement based upon his lack of wrestling skill, professional growth, popularity, and gate appeal.  (Affidavit of James Herd, hereinafter Herd Aff., ¶ 6; Affidavit of Virgil Runnels, hereinafter Runnels Aff., ¶¶ 6-7).

The undersigned is aware of the recent precedent of this circuit that summary judgment is generally inappropriate in Title VII cases where a plaintiff has established sufficient evidence of each element of his prima facie case.  Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11th Cir. 1993).  The entry of summary judgment in favor of defendant is still appropriate, however, "when evidence of discriminatory intent is totally lacking."  Hairston, 9 F.3d at 921.  In the present case, plaintiff has failed to present one shred of admissible evidence which would tend to establish that defendant's proffered legitimate, non-discriminatory reason was pretextual, or to otherwise establish discriminatory intent on the part of defendant.  In view of this fact, defendant is entitled to summary judgment in its favor even in light of the demanding standards set forth in Hairston, supra.

25

Based upon the above facts, the undersigned Magistrate Judge hereby RECOMMENDS that defendant's motion for summary judgment be GRANTED.

IT IS SO ORDERED, REPORTED AND RECOMMENDED, this _17th_ day of May, 1994.



WILLIAM L. HARPER

UNITED STATES MAGISTRATE JUDGE

MAY 19 1954

26

AO 72A



# EXHIBIT / ATTACHMENT

## _____C_____

(To be scanned in place of tab)

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 2 5 1994

LUTHER ....
By: ....

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROBERT ROSS, JR.                )
                                )
            Plaintiff,          )
                                )
vs.                             )        CIVIL ACTION
                                )        FILE NO. 1:93-CV-1206-JEC
WORLD CHAMPIONSHIP              )
WRESTLING, INC.                 )
                                )
            Defendant.          )

## DEFENDANT WORLD CHAMPIONSHIP WRESTLING, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS

COMES NOW World Championship Wrestling, Inc. ("WCW"),
pursuant to Rule 56 of the Federal Rules of Civil Procedure and
Local Rule 220-5(b)(a), and submits the following Statement of
Material Facts to which there is no genuine dispute.

1.

In January 1989, Plaintiff began wrestling for WCW. (Ross
Dep., p. 29) WCW, like other wrestling companies, stages,
promotes and televises professional wrestling matches. Plaintiff
wrestled for WCW as "Ranger Ross." He wrestled approximately
fifteen to twenty days per month under the terms of an oral
agreement and was paid $1000.00 per week, but he sometimes
received a percentage of the gate. (Ross Dep., pp. 37, 39, 42)
Plaintiff wrestled for a total of seventeen months before he was
released in May of 1990 due to budgetary constraints. (Ross
Dep., p. 46)

WCW 102097

2.

In January of 1991, WCW President Jim Herd telephoned Plaintiff and asked him if he wanted to wrestle for WCW again. Plaintiff accepted and met with Jim Herd to negotiate a contract. (Ross Dep., pp. 65, 68, 72)   Herd and Plaintiff agreed on a six month contract under which Plaintiff would earn $1500.00 per week for his services.  Plaintiff testified that he agreed to these terms and on January 9, 1991, signed a "WCW Freelance Wrestler/ Independent Contractor Agreement" (the "Agreement"). (Ross Dep., pp. 70-71; Defendant's Exhibit 2 (attached as Exhibit "A" to Defendant's Brief in Support of Its Motion for Summary Judgment)).

3.

Plaintiff read the Agreement prior to signing it and understood it in its entirety.  (Ross Dep., pp. 72-78)  Paragraph 2 of the Agreement states:

> I understand and agree that I perform such services as
> an independent contractor and not as an employee of
> WCW.  I agree that I shall be fully responsible for
> taxation on the amounts paid to me by WCW as
> compensation for my services and that WCW shall bear no
> responsibilities for such taxation.  I agree that I am
> not entitled to the benefits provided by WCW to its
> employees.  I understand that WCW makes no commitment
> to use my services and makes no guarantee of any number
> of events or amount of compensation.

(Exhibit "A" to Defendant's Brief)  As this language makes clear, Plaintiff was not an employee of WCW, but was an independent contractor.  Plaintiff testified that he understood he was not an employee of WCW.  (Ross Dep., p. 73)

2

WCW 102098

4.

During the time period from January 15, 1991 through July 14, 1991, WCW: (a) provided no retirement, pension, medical or insurance benefits to Plaintiff (Ross Dep., pp. 73-75), (b) withheld no social security taxes or federal/state payroll taxes from the amounts paid to Plaintiff (Ross Dep., p. 73), and (c) provided Plaintiff with no annual leave or other vacation benefits. (Ross Dep., p. 74.)

5.

Plaintiff's primary contact at WCW was Dusty Rhodes. Rhodes assisted and advised WCW management on various elements of WCW wrestling operations including: (a) arranging or booking WCW's professional wrestling matches at various venues throughout the country, (b) determining which wrestlers would wrestle at the events (including which wrestlers would wrestle against each other), (c) determining the final outcome of the wrestling matches, (d) evaluating and recruiting talent, and (e) deciding which wrestler(s) would progress or be "pushed" to the rank of heavyweight champion. (Affidavit of Virgil Runnels, a/k/a Dusty Rhodes (hereinafter "Rhodes Aff."), ¶ 3)).

6.

In determining whether Plaintiff, and other wrestlers, possessed the necessary qualifications, Rhodes relied on several factors including: (a) the quality of their wrestling/performance abilities, (b) audience reaction to their performances, (c) the adequacy of the gate, or draw at those events where the

3

WCW 102099

individual in question was a primary attraction, and (d) their experience as wrestlers. (Rhodes Aff., ¶ 5)

7.

Rick Flair (white), Ron Simmons (black), and Lex Lugar (white), all of whom were heavyweight champions, each had an appealing gimmick and the charisma and audience appeal to generate massive and unmistakable reactions from the audience. Therefore, they became (at different times) WCW's heavyweight champion. In WCW's judgment, Plaintiff did not have the requisite charisma and audience appeal to become WCW's heavyweight champion. (Rhodes Aff., ¶ 6)

8.

In 1991, due to the declining popularity of professional wrestling, WCW was forced to cut its budget. As part of the measures taken to cut the budget, WCW did not renew the independent contractor agreements of several wrestlers, including Plaintiff's. (Rhodes Aff., ¶ 7; Affidavit of WCW's Jim Herd (hereinafter "Herd Aff."), ¶ 6)) Plaintiff was not terminated or fired by WCW. (Ross Dep., pp. 92-93) Rather, his Agreement simply was not renewed.

9.

Plaintiff was one of fourteen professional wrestlers whose agreements were not renewed by WCW during the summer of 1991. (Rhodes Aff., ¶ 7; Herd Aff., ¶ 6) Plaintiff was the only black among the fourteen wrestlers released. (Rhodes Aff., ¶ 8) Plaintiff's race (black) was not a factor or a consideration in

4

WCW's decision not to renew his independent contractor agreement.
(Herd Aff., ¶ 7; Rhodes Aff., ¶ 9)

10.

The names, 1991 earnings, the length of time they were
active, and race of the wrestlers whose agreements were not
renewed by WCW in the summer of 1991 are as follows:

| NAME | 1991 EARNINGS/TIME ACTIVE | | RACE |
|------|---------------|---------------|-------|
| Ranger Ross | $36,250.00 | (6 MOS.) | Black |
| Rip Morgan | $29,622.00 | (7.5 MOS.) | White |
| Randy Colley | $29,925.00 | (6.0 MOS.) | White |
| Robert Gibson | $00.00 | (inactive) | White |
| George Gray | $74,000.00 | (8.5 MOS.) | White |
| Billy Jack Haynes | $16,500.00 | (4.0 MOS.) | White |
| Oliver Humperdink | $00.00 | (inactive) | White |
| Black Bart | $26,350.00 | (7.5 MOS.) | White |
| Dutch Mantel | $58,240.00 | (9.5 MOS.) | White |
| Dick Murdoch | $16,750.00 | (4.5 MOS.) | White |
| Jack Victory | $32,200.00 | (6.0 MOS.) | White |
| Dick Slater | $16,750.00 | (4.0 MOS.) | White |
| Sam Houston | $19,150.00 | (5.0 MOS.) | White |
| Danny Spivey | $57,000.00 | (5.5 MOS.) | White |

(Affidavit of WCW's Eric Holman (hereinafter "Holman Aff.") ¶ 9))

11.

In 1991 alone, no fewer then three hundred and thirty four
(334) male independent contractor wrestlers wrestled for WCW.
Although WCW does not keep records of the races of those
wrestlers, a large majority of the 334 were white.   (Holman Aff.,
¶ 5))

12.

Plaintiff was paid $1500.00 per week and earned $36,250.00
during the term of his Agreement in 1991.  No fewer than two
hundred and seventy eight wrestlers (278) of the three hundred

5

WCW 102101

and thirty four (334) WCW wrestlers were paid less than Plaintiff
in 1991. (Holman Aff., ¶ 6)

13.

Plaintiff did not ever file a charge of discrimination with
the EEOC arising out of WCW's conduct during the January 1989
through May 1990 time period. (Ross Dep., pp. 49-50)

14.

Plaintiff does not know who made the decision at WCW not to
renew his independent contractor agreement in July 1991. (Ross
Dep., p. 97)

15.

Plaintiff does not know the reasons why his independent
contractor agreement was not renewed by WCW in July 1991, nor
does Plaintiff know what factors were considered by the
decisionmakers. (Ross Dep., p. 97)

16.

WCW's Jim Herd (in consultation with WCW's Dusty Rhodes)
made the decision not to renew Plaintiff's independent contractor
agreement. (Rhodes Aff., ¶ 7; Herd Aff., ¶ 6)

17.

WCW did not renew Plaintiff's independent contractor
agreement because of budgetary constraints. (Herd Aff., ¶ 6;
Rhodes Aff., ¶ 7)

6

WCW 102102

18.

Plaintiff does not know who made the decisions about which WCW wrestlers would get opportunities to endorse products or services.  (Ross Dep., pp. 124-126, 135-139)

19.

Plaintiff does not know what factors are considered by the persons who decide which WCW wrestlers will get opportunities to endorse products or services.  (Ross Dep., pp. 124-126, 135-139)

20.

WCW does not decide which of its wrestlers are hired by companies to endorse products or services.  (Rhodes Aff., ¶ 16)

21.

Indeed, the companies who want WCW's wrestlers to endorse their products or services make the decisions regarding which wrestler(s) they want to hire to endorse their products or services.  (Rhodes Aff., ¶ 16)

Respectfully submitted this 25th day of March, 1994.

TROUTMAN SANDERS

*Stephen W. Riddell*

Stephen W. Riddell, Esq.
Georgia State Bar No. 604810

[SIGNATURES CONTINUED ON NEXT PAGE]

7

WCW 102103

[SIGNATURES CONTINUED FROM PRECEDING PAGE]

*Kip P. Roth (by swe)*

Kip P. Roth, Esq.
Georgia State Bar No. 615615

Attorneys for Defendant World
Championship Wrestling, Inc.

5200 NationsBank Building
600 Peachtree Street, N.E.
Atlanta, Georgia  30308-2216
(404) 885-3000

8

WCW 102104

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROBERT ROSS, JR.,            )
                            )
        Plaintiff,           )
                            )     CIVIL ACTION FILE
v.                          )
                            )     NO. 1:93-CV-1206-JEC
WORLD CHAMPIONSHIP          )
WRESTLING, INC.,            )
                            )
        Defendant.          )

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing DEFENDANT WORLD CHAMPIONSHIP WRESTLING, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS upon opposing counsel by depositing a copy in the United States Mail with sufficient postage thereon addressed to:

        Gary J. Pernice, Esq.
        Pernice & Associates, P.C.
        110 Hammond Drive, N.E.
        Atlanta, Georgia 30328-4806

This 25th day of March, 1994.

Stephen W. Riddell
Georgia State Bar No. 604810

**Attorney for Defendant**
**World Championship Wrestling, Inc.**

TROUTMAN SANDERS
600 Peachtree Street, N.E.
Suite 5200
Atlanta, Georgia 30308-2216
(404) 885-3000

WCW 102105