N O T I C E
- - - - - -

To:  Cary Ichter, Esq.
     Meadows Ichter & Bowers
     14 Piedmont Center, Suite 1100
     3535 Piedmont Road, NE
     Atlanta, GA  30305


January 31, 2003


UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Darron Easterling,

                    plaintiff                    CIVIL ACTION

          v.                                     NO. 1:0-cv-1715-CC

World Championship Wrestling, Inc., et al,

                    defendant


NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
---------------------------------------------

     On 1/30/03, World Championship Wrestling, Inc., et al,
filed a motion for  summary judgment in this Court, case document
number 104.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-
sel is hereby notified that within 20 days from the date said motion was

104

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E

To:  Kelly Jean Beard, Esq.
     Meadows Ichter & Bowers
     14 Piedmont Center, Suite 1100
     3535 Piedmont Road, NE
     Atlanta, GA  30305


January 31, 2003


                    UNITED STATES DISTRICT COURT
                             for the
                    NORTHERN DISTRICT OF GEORGIA
                          ATLANTA DIVISION

Darron Easterling,

               plaintiff                    CIVIL ACTION

          v.                                NO. 1:0-cv-1715-CC

World Championship Wrestling, Inc., et al,

               defendant


          NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
          ---------------------------------------------

     On 1/30/03, World Championship Wrestling, Inc., et al,

filed a motion for  summary judgment in this Court, case document

number 104.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -


To:  Merrick D. Bernstein, Esq.
     Meadows Ichter & Bowers
     14 Piedmont Center, Suite 1100
     3535 Piedmont Road, NE
     Atlanta, GA  30305



January 31, 2003



                    UNITED STATES DISTRICT COURT
                             for the
                    NORTHERN DISTRICT OF GEORGIA
                          ATLANTA DIVISION

Darron Easterling,

                    plaintiff                    CIVIL ACTION

          v.                                     NO. 1:0-cv-1715-CC

World Championship Wrestling, Inc., et al,

                    defendant


             NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
             ---------------------------------------------

     On 1/30/03, World Championship Wrestling, Inc., et al,

filed a motion for  summary judgment in this Court, case document

number 104.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

                                        Luther D. Thomas, Clerk
                                        United States District Court
                                        Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -


To:  Michelle Rothenberg, Esq.
     Meadows Ichter & Bowers
     14 Piedmont Center, Suite 1100
     3535 Piedmont Road, NE
     Atlanta, GA  30305


January 31, 2003


                   UNITED STATES DISTRICT COURT
                            for the
                   NORTHERN DISTRICT OF GEORGIA
                        ATLANTA DIVISION

Darron Easterling,

               plaintiff                    CIVIL ACTION

          v.                                NO. 1:0-cv-1715-CC

World Championship Wrestling, Inc., et al,

               defendant


          NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
          --------------------------------------------

     On 1/30/03, World Championship Wrestling, Inc., et al,
filed a motion for  summary judgment in this Court, case document
number 104.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-
sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -


To:  John J. Dalton, Esq.
     Troutman Sanders
     Bank of America Plaza
     Suite 5200
     600 Peachtree Street, N.E.
     Atlanta, GA  30308-2216


January 31, 2003


                    UNITED STATES DISTRICT COURT
                              for the
                    NORTHERN DISTRICT OF GEORGIA
                          ATLANTA DIVISION

Darron Easterling,

                    plaintiff              CIVIL ACTION

         v.                                NO. 1:0-cv-1715-CC

World Championship Wrestling, Inc., et al,

                    defendant


              NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
         --------------------------------------------------

     On 1/30/03, World Championship Wrestling, Inc., et al,

filed a motion for  summary judgment in this Court, case document

number 104.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

                              Luther D. Thomas, Clerk
                              United States District Court
                              Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -


To:  James Andrew Lamberth, Esq.
     Troutman Sanders
     Bank of America Plaza
     Suite 5200
     600 Peachtree Street, N.E.
     Atlanta, GA  30308-2216



January 31, 2003



                  UNITED STATES DISTRICT COURT
                            for the
                  NORTHERN DISTRICT OF GEORGIA
                        ATLANTA DIVISION


Darron Easterling,

                 plaintiff               CIVIL ACTION

         v.                              NO. 1:0-cv-1715-CC

World Championship Wrestling, Inc., et al,

                 defendant



           NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
           ---------------------------------------------


     On 1/30/03, World Championship Wrestling, Inc., et al,

filed a motion for  summary judgment in this Court, case document

number 104.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -

To:  Evan H. Pontz, Esq.
     Troutman Sanders
     Bank of America Plaza
     Suite 5200
     600 Peachtree Street, N.E.
     Atlanta, GA  30308-2216


January 31, 2003


                    UNITED STATES DISTRICT COURT
                              for the
                    NORTHERN DISTRICT OF GEORGIA
                          ATLANTA DIVISION


Darron Easterling,

                 plaintiff                    CIVIL ACTION

           v.                                 NO. 1:0-cv-1715-CC

World Championship Wrestling, Inc., et al,

                 defendant


              NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
              --------------------------------------------

        On 1/30/03, World Championship Wrestling, Inc., et al,

filed a motion for  summary judgment in this Court, case document

number 104.

        Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -


To:  Eric Allen Richardson, Esq.
     Troutman Sanders
     Bank of America Plaza
     Suite 5200
     600 Peachtree Street, N.E.
     Atlanta, GA  30308-2216



January 31, 2003



                    UNITED STATES DISTRICT COURT
                             for the
                    NORTHERN DISTRICT OF GEORGIA
                          ATLANTA DIVISION

Darron Easterling,

                 plaintiff                 CIVIL ACTION

         v.                                NO. 1:0-cv-1715-CC

World Championship Wrestling, Inc., et al,

                 defendant


              NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
              -------------------------------------------

         On 1/30/03, World Championship Wrestling, Inc., et al,

filed a motion for  summary judgment in this Court, case document

number 104.

         Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

                              Luther D. Thomas, Clerk
                              United States District Court
                              Northern District of Georgia


Copies to counsel of record

N O T I C E
- - - - - -


To:  Bridget Bobick, Esq.
     Troutman Sanders
     Bank of America Plaza
     Suite 5200
     600 Peachtree Street, N.E.
     Atlanta, GA  30308-2216


January 31, 2003


                    UNITED STATES DISTRICT COURT
                              for the
                    NORTHERN DISTRICT OF GEORGIA
                           ATLANTA DIVISION

Darron Easterling,

               plaintiff                    CIVIL ACTION

          v.                                NO. 1:0-cv-1715-CC

World Championship Wrestling, Inc., et al,

               defendant


              NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
              ----------------------------------------------

     On 1/30/03, World Championship Wrestling, Inc., et al,

filed a motion for  summary judgment in this Court, case document

number 104.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

> Luther D. Thomas, Clerk
> United States District Court
> Northern District of Georgia

Copies to counsel of record

# ORIGINAL

FILED

JAN 30 2003

Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DARRON EASTERLING,       )
                         )
              Plaintiff, )
                         )       CIVIL ACTION FILE
v.                       )
                         )       NO. 1:00-CV-1715-CC
WORLD CHAMPIONSHIP WRESTLING, INC.,)
TURNER SPORTS, INC. and TURNER )
BROADCASTING SYSTEM, INC., )
                         )
              Defendants. )

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure
and the Local Rules of this Court, Defendants Universal
Wrestling Corporation (f/k/a World Championship Wrestling,
Inc.)("WCW"), Turner Sports, Inc. ("TSI") and Turner
Broadcasting System, Inc. ("TBS")(collectively "Defendants")
hereby move this Court for an order granting summary judgment in
their favor because as a matter of law no genuine issue of
material fact exists to be tried in this case.

Defendants base this Motion on the following documents and
record evidence filed contemporaneously herewith:

1.    Defendants' Memorandum of Law in Support of
      Defendants' Motion for Summary Judgment;

2.    Deposition testimony of Darron Easterling;

3.    Deposition testimony of Joseph N. Hamilton;

4.   Deposition testimony of Dewayne E. Bruce;

5.   Affidavit of Diana Myers;

6.   Affidavit of Joseph Hamilton; and

7.   Defendants' Statement of Undisputed Material Facts.

This 30th day of January, 2003.

JOHN J. DALTON
Georgia Bar No. 203700
JAMES A. LAMBERTH
Georgia Bar No. 431851
ERIC A. RICHARDSON
Georgia Bar No. 233873
EVAN H. PONTZ
Georgia Bar No. 583577

Attorneys for Defendants

TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000 (voice)
(404) 885-3995 (facsimile)

1108036_1.DOC

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DARRON EASTERLING,                    )
                                      )
                    Plaintiff,        )
                                      )         CIVIL ACTION FILE
v.                                    )
                                      )         NO. 1:00-CV-1715-CC
WORLD CHAMPIONSHIP WRESTLING, INC.,)
TURNER SPORTS, INC. and TURNER        )
BROADCASTING SYSTEM, INC.,            )
                                      )
                    Defendants.       )

CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of

*DEFENDANTS' MOTION FOR SUMMARY JUDGMENT* upon the interested

parties by hand delivery to:

                    Cary Ichter
                    Kelly Jean Beard
                    Charles Gernazian
                    Michelle M. Rothenberg-Williams
                    MEADOWS, ICHTER AND BOWERS, P.C.
                    Fourteen Piedmont Center, Suite 1100
                    3535 Piedmont Road
                    Atlanta, GA 30305

This 30th day of January, 2003.

                              EVAN H. PONTZ
                              Georgia Bar No. 583577

TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street, N.E.
Suite 5200
Atlanta, GA  30308-2216
(404) 885-3000 (voice)
(404) 885-3995 (facsimile)

1108036_1.DOC

# ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DARRON EASTERLING,                    )
                                      )
            Plaintiff,                )
                                      )    CIVIL ACTION FILE
v.                                    )
                                      )    NO. 1:00-CV-1715-CC
WORLD CHAMPIONSHIP WRESTLING, INC.,   )
TURNER SPORTS, INC. and TURNER        )
BROADCASTING SYSTEM, INC.,            )
                                      )
            Defendants.               )

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Universal Wrestling Corporation (f/k/a World
Championship Wrestling, Inc.) ("WCW"), Turner Sports, Inc. ("TSI")
and Turner Broadcasting System, Inc. ("TBS") (collectively
"Defendants") submit this memorandum in support of their Motion
for Summary Judgment on all claims brought by Plaintiff Darron
Easterling ("Easterling").

### INTRODUCTION

Easterling filed this action on July 10, 2000, alleging
claims of race discrimination under the Civil Rights Act of 1866,
42 U.S.C. § 1981; alleging failure to pay overtime and minimum
wage, as required by the Fair Labor Standards Act (FLSA), 29
U.S.C. § 201 et seq.; and alleging a state law claim of
intentional infliction of emotional distress.  With respect to

104

Easterling's race discrimination claims, he alleges that WCW (i) discriminated against him because of his race (African-American) with regard to wrestling opportunities and (ii) subjected him to a racially hostile work environment.  Easterling also alleges that by purportedly engaging in such discriminatory conduct, WCW intentionally caused him emotional distress.  With respect to Easterling's FLSA claims, he alleges that he provided clean-up services to WCW for which he was not paid minimum wage and/or overtime.  Based upon principles of agency and vicarious liability, Easterling seeks not only to hold WCW liable for these alleged acts, but to hold TSI and TBS liable as well.

Easterling's claims are baseless.  Easterling cannot present any evidence showing that WCW treated him differently because of his race.  To the contrary, the undisputed evidence establishes that he was given wrestling opportunities and treated like other similarly-situated white wrestlers and/or trainees at WCW and that it was Easterling's lack of experience and talent that precluded his further advancement at WCW.  In addition, the uncontroverted record evidence shows that Easterling was not subjected to a racially hostile work environment, and that he did not provide services to WCW for which compensation was required but not paid.

Because WCW's decisions and actions taken with regard to Easterling were based on legitimate, non-discriminatory business

reasons that had nothing to do with Easterling's race, and because Easterling is not entitled to recover overtime or any other type of compensation under the FLSA for services allegedly provided to WCW, summary judgment should be entered on all of Easterling's claims. Moreover, because Easterling's claims against TSI and TBS derive solely from Easterling's claims against WCW and are based on principles of agency and vicarious liability, summary judgment also should be entered on behalf of TSI and TBS on all of Easterling's claims.

**STATEMENT OF FACTS**

**WCW's Business**

WCW created, produced, and marketed professional wrestling events during the 1990s and through March 2001. (Affidavit of Diana Myers ("Myers Aff.") ¶ 3, a true and correct copy of which is attached hereto as Exhibit A). WCW's wrestling events were seen by live audiences and/or aired on various television networks and pay-per-view, cable and satellite systems. (Id.) The wrestlers and other on-screen talent who appeared in WCW's wrestling events provided their services to WCW as independent contractors, either through formal written contracts or without written agreements. (Id. at ¶ 4). A creative team of writers and producers at WCW created WCW's wrestling events, both live and

taped, with the goal of entertaining wrestling fans and general audiences nationwide.  (Id. at ¶ 3).

After having much commercial and financial success in the mid-to-late 1990s, WCW's business suffered a sharp downturn in late 1998 into 1999.  (Myers Aff. at ¶ 6).  As a result of this business downturn, WCW began to significantly restructure many of its operations, including its training facility, known as the Power Plant.  (Id.; Affidavit of Joseph Hamilton ("Hamilton Aff."), ¶ 6, a true and correct copy of which is attached hereto as Exhibit B).

Despite WCW's restructuring efforts, WCW's business downturn continued, and in March 2001, WCW sold certain of its assets and completely ceased its operations.  (Myers Aff. at ¶ 8).  After the sale of its assets was completed, WCW changed its name to Universal Wrestling Corporation.  (Id.)

**Easterling's Background And Relationship With WCW**

Easterling first became involved with professional wrestling in 1997, after a friend recommended that he tryout for WCW. (Deposition of Darron Easterling ("Easterling Dep."), at 15-16).[1] Although Easterling did not have any professional wrestling

---

[1] Excerpts of deposition testimony and copies of deposition exhibits referenced herein are included in the Appendix, filed simultaneously herewith.

experience, Easterling contacted WCW and inquired about a tryout. (Id. at 16).

In February 1997, Easterling attended a three day tryout, for which he paid a $250.00 fee.  (Id.)  After Easterling's tryout, WCW invited Easterling to train in WCW's full-time professional wrestling training program.  (Id. at 21).  The purpose behind this training program was to help Easterling develop not only the physical and wrestling skills necessary to wrestle professionally with WCW, but also the charisma, acting ability, and uniqueness necessary both to appeal to the masses and to compete in wrestling matches with minimal instruction.  (Hamilton Aff. at ¶ 5).

Although Easterling's tryout was in February 1997 and WCW immediately invited Easterling to train full-time in the training program, he did not begin training at WCW until over a year later, in March 1998.  (Easterling Dep. at 15, 22).[2]  While Easterling trained at the Power Plant, he held two jobs.  Easterling worked full-time at an automobile detailing shop and worked part-time as a dancer.  (Id. at 23, 36).  Generally, Easterling would train at the Power Plant until early afternoon, then he would go to his detailing job in the afternoons.  Easterling danced on weekends. (Id. at 23-24, 36).

---

[2] Easterling paid a total of $2,300 to train at the Power Plant. (Easterling Dep. at 22).

**WCW Relocates And Restructures Its Training Program**

As part of the restructuring at WCW at the end of 1998 and into 1999, WCW transferred its Power Plant facility from its previous location to a new location on Log Cabin Drive, in Smyrna, Georgia.  (Hamilton Aff. at ¶ 6).  WCW established this new facility to serve as WCW's training facility for a smaller group of wrestler trainees than the group who had previously been training at the former Power Plant location.  (Id.)  WCW planned to and did enter into written independent contractor agreements with the wrestlers selected to train at this new facility.  (Id.)

**Easterling Is Not Selected To Receive An Independent Contractor Agreement**

To select the individuals who would be signed to independent contractor agreements, WCW training officials spent roughly six to eight weeks evaluating the skills and talents of the approximately forty individuals who were then training at the Power Plant.  (Hamilton Aff. at ¶ 7).  At the end of this period, WCW conducted "tryout" sessions and matches among all of the trainees.  (Id.)  WCW conducted the tryouts and made decisions regarding which Power Plant trainees would be offered written agreements in early 1999.  (Hamilton Aff. at ¶¶ 6-7).  At the time the tryouts were held, Easterling had been training less than a year at WCW.  (Hamilton Aff. at ¶ 8; Easterling Dep. at 38).  Easterling participated in a tryout match.  (Easterling Dep. at 41-42).

Although WCW believed that Easterling was a good size and possessed an impressive physique, because Easterling had no professional wrestling experience prior to training with WCW, and had trained less than a year prior to the tryouts, Easterling had not acquired the skills necessary to be a professional wrestler. (Hamilton Aff. at ¶ 8; Deposition Joseph N. Hamilton ("Hamilton Dep."), at 66). Further, upon evaluation, WCW concluded that Easterling had less potential to develop into a successful professional wrestler than other trainees. (Hamilton Aff. ¶ 8). He appeared clumsy in the ring and had difficulty staying on his feet. (Hamilton Aff. at ¶ 8; Hamilton Dep. at 66). Based on Easterling's lack of experience, failure to develop the skills necessary to be a professional wrestler in the short period he trained at WCW, and WCW's belief that Easterling did not have potential to develop those skills, WCW concluded that Easterling was not as deserving of a trainee contract as other trainees and did not offer Easterling a contract to train at the new facility. (Hamilton Aff. at ¶¶ 8-9).

## ARGUMENT AND CITATION OF AUTHORITY

### I.   THE SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate if the evidence before the Court shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law.   Fed. R. Civ. P. 56(c); see Vason v. City of Montgomery, 240

F.3d 905, 907 (11th Cir. 2001).   To survive summary judgment, the

nonmoving party must come forward with concrete evidence in the

form of "*specific facts* showing that there is a genuine issue for

trial."   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (emphasis

added).

     The summary judgment rule applies with equal force in

discrimination cases.   The Eleventh Circuit recently held:

> While acknowledging that questions of fact in job
> discrimination cases are "both sensitive and difficult"
> and "[t]here will seldom be 'eyewitness' testimony as
> to the employer's mental processes," the [U.S.] Supreme
> Court has told us that "none of this means that trial
> courts or reviewing courts should treat discrimination
> differently from other ultimate questions of fact."
> St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 524
> (1993).   ...And quite recently, the [U.S. Supreme]
> Court rejected a rule which would have made it easier
> for job discrimination plaintiffs to get their case to
> a jury, explaining that "[t]o hold otherwise would be
> effectively to insulate an entire category of
> employment discrimination *cases from [appropriate]
> review...*, and we have reiterated that trial courts
> should not treat *discrimination* differently from other
> ultimate questions of fact."   Reeves, 120 S. Ct. at
> 2109.   ...*The long and short of it is that the summary
> judgment rule applies in job discrimination cases just
> as in other cases.   No thumb is to be placed on either
> side of the scale.*

Chapman v. Al Transport, 229 F.3d 1012, 1026 (11th Cir. 2000).   As

demonstrated herein, Easterling cannot present evidence sufficient

to create a genuine issue of material fact on any of his claims.

Accordingly, Defendants are entitled to summary judgment on all of Easterling's claims.[3]

## II.   SUMMARY JUDGMENT SHOULD BE GRANTED AS TO EASTERLING'S § 1981 CLAIMS BECAUSE EASTERLING CANNOT ESTABLISH THAT WCW DISCRIMINATED AGAINST HIM ON THE BASIS OF HIS RACE.

In a disparate treatment case such as this one, Easterling must prove "intentional discrimination" to prevail.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).  Because Easterling cannot present direct evidence of discrimination, the proof scheme articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), applies to his claim of disparate treatment.  See Burdine, 450 U.S. at 254.  Under the McDonnell Douglas proof scheme, Easterling must present circumstantial evidence sufficient to establish a prima facie case of discrimination.  Farrior v. H.J. Russell & Co., 45 F. Supp. 2d 1358, 1366 (N.D. Ga. 1999).

---

[3] Easterling's claims against TSI and TBS are based solely on theories of derivative liability.  (Third Amended Complaint ¶¶ 36-48).  Easterling does not claim that either TSI or TBS took any improper actions against Easterling or violated any law as to Easterling.  Rather, Easterling claims that WCW took such actions, and that TSI and TBS should be held accountable because of their purported relationship with WCW.  (Id.)  Because Easterling's claims against WCW fail as a matter of law, Easterling's derivative claims against TSI and TBS also fail.

The mere presentation of circumstantial evidence is not
sufficient to defeat a motion for summary judgment.  Even if a
plaintiff can establish a prima facie case of race discrimination,
the burden then shifts to the defendant to articulate a
legitimate, nondiscriminatory reason for its actions regarding the
plaintiff.  Reeves, 530 U.S. at 142.  The defendant is not
required to prove absence of discriminatory motive, but merely to
articulate some legitimate reason for its actions.  Moreover, the
defendant's burden is one of production and not persuasion.  See
Id.; Burdine, 450 U.S. at 253.

Once such a reason is articulated, any presumption of
discrimination arising out of the prima facie case "simply drops
out of the picture."  St. Mary's Honor Ctr. v. Hicks, 509 U.S.
502, 510-511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).  The
plaintiff must then "prove by a preponderance of the evidence that
the legitimate reasons offered . . . were not [the] true reasons,
but were a pretext for discrimination."  Burdine, 450 U.S. at 253;
see Reeves, 530 U.S. at 143.  The plaintiff must present "concrete
evidence in the form of specific facts which show that the
defendant's proffered reason is mere pretext.  Mere conclusory
allegations and assertions will not suffice."  Earley v. Champion
Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).  "The ultimate
burden of persuading the trier of fact that the defendant

intentionally discriminated against the plaintiff remains at all times with the plaintiff." St. Mary's Honor Center, 509 U.S. at 507 (quoting Burdine, 450 U.S. at 253).

Easterling cannot establish that WCW intentionally discriminated against him because of his race by purportedly failing to offer him a trainee contract. Moreover, Easterling's hostile environment claim is baseless. Accordingly, Defendants are entitled to summary judgment on Easterling's § 1981 claims.

**A.    Easterling Cannot Establish That He Was Denied Wrestling Opportunities Because Of His Race.**

Most of Easterling's allegations boil down to a "failure-to-promote" or "failure-to-advance" type claim. Easterling alleges that WCW denied him opportunities by not offering him a wrestling contract. (Third Amended Complaint ¶ 55; Easterling Dep. at 61). Easterling, however, cannot produce any evidence that WCW actually and intentionally refused to give him a trainee contract "because of" his race. Oncale v. Sundowner Offshore Services, Inc. 523 U.S. 75, 78, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) (quoting 42 U.S.C. § 2000e-2(a)(1)) (emphasis added).

Easterling cannot establish a prima facie case of failure to promote on account of his race. To do so under the McDonnell-Douglas framework, Easterling must show: (1) that he was a member of a protected class; (2) that he sought or applied for one or more positions; (3) that he was otherwise qualified for the

1099166_5.DOC                           -11-

positions sought; and (4) that, after his rejection, the positions remained open or were filled by a person outside his protected class.  See Schoenfield v. Babbitt, 168 F.3d 1257, 1267 (11th Cir. 1999).  The record is devoid of any evidence establishing that Easterling was qualified for the wrestling positions or opportunities about which he complains.

Because wrestling matches are a scripted form of entertainment, factors such as charisma, crowd appeal, uniqueness, wrestling skill, physical capabilities, persona and acting ability are essential prerequisites for a trainee/wrestler at the Power Plant to receive a contract.  (Hamilton Aff. at ¶ 4).  In this case, the undisputed evidence establishes that Easterling did not have any wrestling experience before he commenced training sessions at WCW's Power Plant, and that he trained less than a year before WCW conducted tryouts to determine which trainees would receive trainee contracts.  (Easterling Dep. at 38).  In addition to his lack of experience and minimal formal training, Easterling appeared clumsy in the ring and had difficulty at times staying on his feet.  (Hamilton Aff. at ¶ 8; Easterling Dep. at 66).  At the time that WCW selected trainees to receive contracts, Easterling had not developed the necessary moves or other skills required of a professional wrestler.  (Hamilton Aff. at ¶ 8; Hamilton Dep. at 66; Dewayne E. Bruce ("Bruce Dep."), at 57).  WCW

did not believe that Easterling had the potential to significantly improve. (Hamilton Aff. at ¶ 8). Further, there is no evidence that Easterling possessed any acting or speaking skills or charisma, all attributes that Easterling admits are necessary for a trainee to receive a wrestling contract. (Easterling Dep. at 92-93). WCW determined that Easterling was not qualified to receive a trainee contract because of his inexperience, lack of skills, and perceived lack of potential. (Hamilton Aff. at ¶¶ 8-9). Because Easterling cannot establish that he was qualified to receive the wrestling contract he claims he was denied, his failure to promote claim fails.

Easterling also has failed to make out a prima facie case of disparate treatment with respect to advancement opportunities, because he cannot point to any **similarly situated** white wrestler within WCW who was given more and better wrestling opportunities than Easterling was given.

To succeed on a disparate treatment claim for failure to promote, Easterling must establish "that similarly situated or less qualified [individuals] were promoted or transferred" to the position about which he complains. Pashoian v. GTE Directories, 208 F. Supp. 2d 1293, 1308 (M.D. Fla. 2002). Easterling claims that trainees Chase Tatum, Mark Millennium, Chuck Palumbo, Mike Sanders, Allen Funk, and Johnny "the Bull" received opportunities

which Easterling believes he should have received. (Easterling
Dep. at 62). In making this assertion, however, Easterling relies
on nothing more than his own subjective opinion. Easterling's
subjective opinion that he was similarly situated to or better
qualified than other wrestlers who received contracts or were
given other opportunities that he did not receive is insufficient.
See Lee v. GTE Florida, Inc., 226 F.3d 1249, 1254 (11th Cir. 2000)
(explaining that "an employee's own opinions about his . . .
qualifications do not give rise to a material factual dispute")
(quoting Simms v. Oklahoma ex rel. Dept. of Mental Health and
Substance Abuse Svcs., 165 F.3d 1321, 1329-30 (10th Cir. 1999),
cert. denied, 528 U.S. 815, 120 S. Ct. 53 (1999)); see also Ramsey
v. Leath, 706 F.2d 1166, 1170 (11th Cir. 1983) (instructing that
an employee's subjective belief does not establish a jury issue).

        Moreover, to sustain a claim of discrimination, Easterling
must do more than show that he was better qualified than other
individuals who received the trainee contract that he wanted.
Denney v. City of Albany, 247 F.3d 1172, 1187 (11th Cir. 2001)
(quoting Lee v. GTE Florida, Inc., 226 F.3d 1249, 1253-54 (11th
Cir. 2000) (quotations omitted). "Disparities in qualifications
are not enough in and of themselves to demonstrate discriminatory
intent unless these disparities are so apparent as virtually to
jump off the page and slap you in the face." Id.; see also Miller

v. Bed, Bath & Beyond, Inc., 185 F. Supp. 2d 1253, 1271 (N.D. Ala. 2002). Here, Easterling cannot even establish that the trainees that he points to or any other trainees at WCW were similarly situated to him. Easterling admits that he is not even sure if the allegedly similarly situated trainees who he identifies in fact received contracts with WCW. (Easterling Dep. at 62-63). Moreover, he concedes that he does not know their level of experience or backgrounds. (Id. at 62-64). Because he is unable to meet this lesser burden as to these other trainees, he most certainly cannot establish that he was obviously *more qualified* than they were. Accordingly, Easterling cannot establish a prima facie case of discrimination in denial of opportunities, and this claim fails.

**B.    WCW Has Articulated Legitimate, Nondiscriminatory Reasons For Not Offering Easterling A Trainee Contract.**

Easterling's failure to promote claim also fails because WCW has established that it had legitimate, nondiscriminatory reasons for not offering Easterling a contract to continue training with WCW. The undisputed evidence of record establishes that Easterling did not receive a contract offer or other such

opportunities because he lacked the training and skills necessary
to be a successful wrestler with WCW.[4]

The record also shows that at the end of 1998 and into 1999,
WCW was experiencing and responding to a business downturn, and
began to reduce the number of wrestling shows that it produced.
Consequently, WCW had less need for mediocre wrestling talent, and
terminated numerous wrestlers and other talent as a cost-cutting
measure. (Myers Aff. at ¶ 6). Because there was less need for
inexperienced and less talented wrestlers, WCW restructured its
training program and significantly reduced the number of trainees.
(Hamilton Aff. at ¶ 6). To effectively reduce the number of
trainees, WCW evaluated the trainees at the Power Plant and held
tryouts to determine which trainees would receive written
independent contractor agreement. (Id.) It is undisputed that at
the time WCW was going through this process, Easterling had been
training with WCW less than a year and had no prior wrestling
experience. (Easterling Dep. at 38). WCW did not offer
Easterling a written contract or other additional opportunities
because of his inexperience, lack of training, and failure to
acquire the skills necessary to be a successful professional
wrestler at WCW. (Hamilton Aff. at ¶¶ 8-9; Hamilton Dep. at 66).

---

[4] Easterling concedes that he does not know the basis of WCW's
decision to not offer him a contract and that it may have been for
reasons other than his race. (Easterling Dep. at 45, 65).

1099166_5.DOC                          -16-

Because Easterling cannot dispute that there was a business downturn at WCW, that there was less need for less talented and inexperienced wrestlers, and that he was considered less deserving by WCW of a contract or any other opportunities which he contends he was denied, he cannot establish that the nondiscriminatory reasons offered by WCW are a pretext for discrimination. Accordingly, Easterling's discrimination claim fails.  See Burdine, 450 U.S. at 256 (to survive summary judgment, a plaintiff must directly persuade the court that a "discriminatory reason more likely motivated [WCW] or indirectly [prove discrimination] by showing that [WCW]'s proffered explanation is [pretextual and] unworthy of credence.").

## C.    Easterling Cannot Establish That He Was Subjected To A Racially Hostile Work Environment.

Easterling also alleges that while with WCW he was subjected to a racially hostile environment.  (Third Amended Complaint ¶ 56).  Easterling bases this claim on his contention that, while he trained at WCW, he heard a few comments that he perceived to be derogatory, and was purportedly "required" to assist in cleaning the Power Plant and to help assemble and disassemble the wrestling ring.  (Easterling Dep. at 54-55, 68, 72-78, 80-81).

With respect to the alleged comments, Easterling claims that: (1) a trainer allegedly said that Easterling would understand something because he is African-American; (2) "someone" --

Easterling does not remember the identity of the speaker -- said
that another wrestler was not "pushed" because he is African-
American; (3) a cameraman allegedly told Easterling that someone
at WCW "might call [him] the N word;" and (4) that a wrestler told
Easterling that someone was making racial jokes (but Easterling
could not identify who allegedly made the jokes or provide any
specifics regarding their content).  (Id. at 68, 72-78, 80-81).
Easterling's vague, conclusory and hearsay "evidence" is wholly
insufficient to establish that he was subjected to a racially
hostile work environment.

Other than the first alleged comment described above, all of
the comments upon which Easterling relies as alleged evidence are
inadmissible hearsay and cannot support his hostile work
environment claim.  Pritchard v. Southern Co. Servs., 92 F.3d
1130, 1135 (11th Cir. 1996) (instructing that inadmissible hearsay
cannot be offered to defeat a summary judgment motion when it is
not reducible to admissible form at trial); Evans v. McClain of
Georgia, Inc., 131 F.3d 957, 962 (11th Cir. 1997) (concluding that
the district court correctly dismissed hearsay evidence because it
was "not significantly probative" and was based on "gossip, common
knowledge and hearsay statement of an unidentified
representative"); see also Edwards v. Wallace Community College,
49 F.3d 1517, 1520-1521 (11th Cir. 1995) (concluding that hostile

work environment claim was without merit because many of the
alleged statements were either speculation or hearsay, and because
there was insufficient information as to when the alleged
statements were made).

Further, there is no evidence that any of the alleged
comments were in fact, or were intended to be, racially
derogatory.  More importantly, these comments were the only
allegedly derogatory remarks that Easterling claims he was exposed
to at WCW.  (Easterling Dep. at 79-80).  In fact, Easterling
admits that he cannot recall being subjected to any racial slurs
while at WCW.  (Id.)

To succeed on his hostile environment claim, Easterling must
demonstrate that WCW's alleged actions "altered the condition of
the workplace, creating an objectively abusive and hostile
atmosphere."  Edwards, 49 F.3d at 1521 (11th Cir. 1995) (citing
Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367,
126 L. Ed. 2d 295 (1993)).  "For example, the racial slurs
allegedly spoken . . . had to be so 'commonplace, overt and
denigrating that they created an atmosphere charged with racial
hostility.'"  Id. (quotations omitted).  Factors that must be
considered in assessing the merits of a hostile environment claim
include the frequency and severity of the alleged discriminatory
conduct, whether the conduct was threatening or humiliating, and

1099166_5.DOC                          -19-

whether it unreasonably interfered with Easterling's performance
with WCW.  Id. at 1521-22.  Easterling's claim consequently fails
because, even assuming that the alleged comments that Easterling
offers in support of his claim were made and are admissible, there
is no evidence that these alleged comments created a racially
hostile environment for Easterling.

Easterling's hostile environment claim also fails because he
cannot support his allegation with "any specific examples of how
[the alleged] discriminatory conduct . . . had a deleterious
effect on his [work] performance."  See Mitchell v. Carrier Corp.,
954 F. Supp. 1568, 1578 (M.D. Ga. 1995), aff'd, 108 F.3d 343 (11th
Cir. 1997); see also Evans v. Pemco Aeroplex, 1998 WL 1048470, No.
CIVACV96-S-2801-S (N.D. Ala. Feb. 23, 1998) (explaining in case in
which five incidents of racist conduct occurred, including the use
of nooses and the letters "KKK," that without evidence that the
incidents affected [the plaintiff's] work performance, the court
could not conclude that the alleged harassment was sufficiently
severe and pervasive to alter a term or condition of employment).
In this case, not only has Easterling failed to establish that his
performance declined because of any alleged acts of
discrimination, he has, to the contrary, claimed that his
performance at WCW was so exemplary as to warrant a contract or
other additional wrestling opportunities.  (Easterling Dep. at

62). Easterling can offer no evidence of the kind of "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. at 21.

Easterling's assertions that he was required to help clean up the Power Plant and to help assemble and take down the wrestling ring (Third Amended Complaint ¶ 29; Easterling Dep. at 55, 67) do not salvage his claim. As Easterling concedes, WCW also instructed white trainees at the Power Plant to help clean up the Power Plant and to help assemble and take down the wrestling ring as part of the training program. (Easterling Dep. at 55). Because cleaning up the Power Plant and assembling the wrestling ring were race-neutral incidents of training at the Power Plant, Easterling cannot rely on this evidence in support of his hostile environment claim. Smith v. Mount Sinai Medical Ctr. of Greater Miami, Inc., 36 F. Supp. 2d 1341, 1346 (S.D. Fla. 1998). Accordingly, summary judgment should be entered on Easterling's hostile environment claim.

**III. SUMMARY JUDGMENT SHOULD BE GRANTED AS TO EASTERLING'S FLSA CLAIMS BECAUSE NO EMPLOYER-EMPLOYEE RELATIONSHIP EXISTED BETWEEN EASTERLING AND WCW.**

Easterling asserts that WCW failed to pay him minimum wage and overtime, as required by the FLSA, during the time that he was

1099166_5.DOC                    -21-

training at the Power Plant.   (Third Amended Complaint ¶¶ 62-73,
Easterling Dep. at 90).  However, the FLSA provides minimum wage
and overtime pay requirements only for **employees** as defined
therein.   29 U.S.C. §§ 203(e)(1) and (g), 206(a), and 207(a).
Because Easterling cannot demonstrate that he was an "employee" of
WCW during the time for which he asserts claims for minimum wage
and overtime pay, Easterling's FLSA claims fail.

       To determine whether an FLSA-covered employer-employee
relationship exists, courts "look not to the common law
definitions of those terms, . . . but rather to the 'economic
reality' of all the circumstances concerning whether the putative
employee is economically dependent upon the alleged employer."
Aimable v. Long and Scott Farms, 20 F.3d 434, 439 (11th Cir. 1994)
(emphasis added) (citing Rutherford Food Corp. v. McComb, 331 U.S.
722, 730 (1947)), cert. denied, 513 U.S. 943, 115 S. Ct. 351, 130
L. Ed. 2d 306 (1994).  Where an individual provides services to
several different companies, performs his services by the job,
rather than on a more permanent basis, uses his own materials, and
exercises control over the manner in which he performs his
services, he is, in "economic reality," an independent
businessman, not an employee covered by the FLSA.   Donovan v.
Tehco, Inc., 542 F.2d 141, 143-44 (5th Cir. 1981).

1099166_5.DOC                           -22-

Application of the "economic reality" test to Easterling conclusively establishes that, during the time he was training at the Power Plant and providing services to WCW, Easterling was an independent businessman and not an employee. During the same period that Easterling was training with and providing wrestling services to WCW, as stated above, he held two other jobs on a full-time and part-time basis. (Easterling Dep. at 23-24, 36). Easterling controlled when he trained at the Power Plant, and when he went to these other jobs. Id. Easterling also developed his own wrestling character, persona and gimmicks. (Id. at 35-39). Additionally, when WCW compensated Easterling for performing services, he was paid by the job and WCW did not withhold his taxes. (Easterling at 47-48). The fact that Easterling engaged in other compensated work outside of WCW during this time, exercised control over his training schedule and the development of his wrestling character, persona and gimmicks, and was paid by the job evidences that he was not an employee of WCW.[5]

All of the above facts demonstrate that, as a matter of economic reality, Easterling was not an "employee" under the FLSA.

_____

[5] See Donovan, 542 F.3d at 140 (holding that plaintiff was not an employee where he "worked for several other [employers] during the period at issue, invariably worked by the job rather than by the hour, supplied his own materials . . ., and possessed . . . independence and creative freedom in" deciding the manner in which he would achieve the desired results in his employment).

Therefore, Defendants are entitled to summary judgment on

Easterling's FLSA claim.   See Donovan, 542 F.2d at 143-44.[6]

## IV.   SUMMARY JUDGMENT SHOULD BE GRANTED ON EASTERLING'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM BECAUSE WCW DID NOT ENGAGE IN ANY OUTRAGEOUS CONDUCT.

Easterling contends that WCW, by allegedly engaging in

racially discriminatory conduct, intentionally inflicted severe

emotional distress on him.   (Third Amended Complaint ¶¶ 59-61,

Easterling Dep. at 88).   This claim is baseless.

To establish a claim for intentional infliction of emotional

distress under Georgia law, a plaintiff must establish:   (1)

intentional or reckless conduct; (2) extreme and outrageous

conduct by the defendant; (3) severe emotional distress suffered

by the plaintiff; and (4) a causal connection between the conduct

and the emotional distress.   Hendrix v. Phillips, 207 Ga. App.

394, 395, 428 S.E.2d 91, 92-93 (1993).

To be "extreme and outrageous," the alleged conduct must be

so "terrifying or insulting as naturally to humiliate, embarrass

or frighten" the plaintiff and so severe that "no reasonable man

could be expected to endure" these actions.   Beck v. Interstate

Brands Corp., 953 F.2d 1275, 1276 (11th Cir. 1992).   Liability for

intentional infliction of emotional distress does not extend to

---

[6] Easterling's claim with respect to overtime under the FLSA also
fails because Easterling cannot establish that he worked in excess
of forty (40) hours in any given week that he provided services to
WCW.

"mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Ward v. Papa's Pizza To Go, Inc., 907 F. Supp. 1535, 1540 (S.D. Ga. 1995). Thus, when a plaintiff alleges that conduct such as race discrimination constitutes intentional infliction of emotional distress, the alleged conduct must be severe, such as an on-going pattern of explicit and oppressive harassment that includes or resembles a physical assault. See Coleman v. Housing Auth. of Americus, 191 Ga. App. 166, 381 S.E.2d 303 (1989). When the alleged conduct is racial epithets and race-based decisions in carrying out a contract, it must be combined with extreme and graphic threats such as of bodily harm, dismemberment and death. See Brown v. Manning, 764 F. Supp. 183, 185 (M.D. Ga. 1991). Easterling cannot even come close to meeting this standard.

In this case, Easterling cannot provide any evidence of conduct by WCW that satisfies the requirements of "extreme and outrageous" behavior. Rather, Easterling testified that there is nothing other than WCW's alleged acts of discrimination that caused him emotional harm. (Easterling Dep. at 88).[7] Because the undisputed evidence shows that Easterling was not subjected to discriminatory treatment, and because Easterling must establish

---

[7] There is no evidence that Easterling suffered severe emotional distress. Easterling admits that he never sought or received treatment or medication related to the emotional distress he contends he suffered. (Easterling Dep. at 98-99).

more than just alleged discriminatory conduct to sustain his intentional infliction of emotional distress claim, summary judgment should be entered on this claim.  See Beck, 953 F.2d at 1276 (determining that discharge of employee for allegedly discriminatory reasons was insufficient to support intentional infliction of emotional distress claim); Ward, 907 F. Supp. at 1542 (concluding that repeated refusal to hire an individual under circumstances that could constitute unlawful discrimination was insufficient to establish an intentional infliction of emotional distress claim); Borden v. Johnson, 196 Ga. App. 288, 395 S.E.2d 628 (1990) (establishing that the demotion or discharge for whatever reason, even discriminatory reason, does not give rise to an intentional infliction of emotional distress claim).

## CONCLUSION

For all of the foregoing reasons, Defendants' Motion for Summary Judgment on all of Easterling's claims asserted in this action should be granted, and all of Easterling's claims should be dismissed.

This 30th day of January, 2003.

                        TROUTMAN SANDERS LLP


                        JOHN J. DALTON
                        Georgia Bar No. 203700
                        JAMES A. LAMBERTH
                        Georgia Bar No. 431851
                        ERIC A. RICHARDSON
                        Georgia Bar No. 233873
                        EVAN H. PONTZ
                        Georgia Bar No. 583577

                        Suite 5200, Bank of America Plaza
                        600 Peachtree Street, N.E.
                        Atlanta, GA  30308-2216
                        (404) 885-3000

                        Attorneys for Defendants

## **CERTIFICATION**

Pursuant to Local Rule 7.1(D), I certify that this Memorandum of Law has been prepared with one of the fonts and point selections ("Courier New 12") approved by the Court in Local Rule 5.1(B).


This 30th day of January, 2003.

_Evan H. Pontz_
Evan H. Pontz
TROUTMAN SANDERS LLP
Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000



# EXHIBIT / ATTACHMENT

## A

(To be scanned in place of tab)

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Walker v. World Championship Wrestling, Inc., Turner Sports,
    Inc. and Turner Broadcasting System, Inc., Civ. File No.
    1:00-CV-0367-CC
Onoo v. World Championship Wrestling, Inc., Turner Sports, Inc.
    and Turner Broadcasting System, Inc., Civ. File No. 1:00-
    CV-0368-CC
Norris v. World Championship Wrestling, Inc., Turner Sports,
    Inc. and Turner Broadcasting System, Inc., Civ. File No.
    1:00-CV-0369-CC
Easterling v. World Championship Wrestling, Inc. and Turner
    Sports, Inc. and Turner Broadcasting System, Inc., Civ.
    File No. 1:00-CV-1715-CC
Davis v. World Championship Wrestling, Inc. and Turner Sports,
    Inc. and Turner Broadcasting System, Inc., Civ. File No.
    1:00-CV-1716-CC
Worthen v. World Championship Wrestling, Inc. and Turner Sports,
    Inc. and Turner Broadcasting System, Inc., Civ. File No.
    1:00-CV-1717-CC
Speight v. World Championship Wrestling, Inc. and Turner Sports,
    Inc. and Turner Broadcasting System, Inc., Civ. File No.
    1:00-CV-1718-CC
Saengsiphan v. World Championship Wrestling, Inc. and Turner
    Sports, Inc. and Turner Broadcasting System, Inc., Civ.
    File No. 1:00-CV-1719-CC
Reeves v. World Championship Wrestling, Inc. and Turner Sports,
    Inc. and Turner Broadcasting System, Inc., Civ. File No.
    1:00-CV-1720-CC
Patterson v. World Championship Wrestling, Inc., Turner Sports,
    Inc., Turner Entertainment Group, Inc. and Turner
    Broadcasting System, Inc., Civ. File No. 1:01-CV-1152-CC

**AFFIDAVIT OF DIANA MYERS**

DIANA MYERS, who having personally appeared before the
undersigned officer duly authorized to administer oaths and
having been first duly sworn according to law, deposes and
states the following:

1.   My name is Diana Myers.   I am of majority age, and I give this testimony of my own free will.   I have personal knowledge of and am competent to testify to the facts stated herein.   The facts stated herein are true and correct.

2.   I was employed by Universal Wrestling Corporation (f/k/a/ World Championship Wrestling, Inc. and hereinafter referred to as "WCW") beginning in October 1997 and most recently held the title of Vice President of Business and Legal Affairs.   In my position at WCW, I was familiar with virtually all aspects of WCW's business and legal affairs.

3.   WCW created, produced, and marketed professional wrestling programs during the 1990s and through March 2001. WCW's wrestling programs were both witnessed by live audiences and aired on various television networks and pay-per-view cable and satellite systems.   WCW's wrestling programs, both live and taped, were created by writers and producers at WCW, with the goal of entertaining wrestling fans and general audiences nationwide.   The individuals responsible for writing WCW's wrestling programs were often referred to as "bookers".

4.   WCW's wrestling programs included appearances by many types of live or "on-screen" talent, including wrestlers, match

referees, and other wrestling talent appearing on camera or at live (but non-televised) events. These individuals appearing in wrestling programs provided their services to WCW as independent contractors, either through formal written contracts or without written agreements.

5.    Wrestlers, referees and other wrestling talent were aware of the planned outcome of each wrestling match or appearance and provided appropriate services to attempt to convincingly carry out that pre-determined outcome of the event for the audience.

6.    WCW had much commercial and financial success during the mid to late 1990s. In 1999, WCW's business suffered from a sharp downturn and WCW was losing significant sums of money. Therefore, WCW began downsizing its operations by reducing the number of talent it contracted with, reducing the compensation of existing talent, and producing fewer and fewer wrestling programs. As part of the downsizing, WCW considered canceling some of its shows. In early 2000, WCW in fact terminated some of its programs, including a taped show commonly referred to as its "Saturday Night" show. Before it was canceled, the task of writing or "booking" the Saturday Night wrestling show was being performed by individuals experienced in booking wrestling

programs.  At the same time, WCW also reduced the length of some of its other remaining wrestling programs.

7.  **Due to these business circumstances and WCW's downsizing efforts,** in 1999 and over the next two years, WCW had less and less need for wrestling services, including on-screen talent, trainers, referees and writers or "bookers". Specifically, in and after 1999, there were no open opportunities available for a position solely as a booker of WCW's Saturday Night wrestling program and WCW was not actively seeking bookers solely for its Saturday Night show.

8.  **The downsizing efforts did not stop WCW's business** downturn, and in March 2001, WCW sold certain of its assets and completely closed down its operations.  After the sale of assets was completed, WCW changed its name to Universal Wrestling Corporation to close up remaining corporate operations.

9.  **In my capacity as Vice President of Business and Legal** Affairs for WCW, I was responsible for reviewing and documenting merchandizing agreements in which WCW was a party.

10.  In 1998, WCW entered into a merchandizing agreement with Toshiba in Japan to produce and distribute a music compact

disc in Japan entitled "New World Order" containing WCW entrance music.  Mr. Kazuo "Sonny" Onoo was involved in this agreement. Mr. Onoo was paid all money he was due from WCW regarding this New World Order compact disc.

11.   WCW also entered into a different agreement with Tommy Boy Records.  Pursuant to the terms of this agreement, Tommy Boy Records developed and distributed a music CD entitled "WCW Mayhem."  WCW Mayhem was a compilation of WCW music along with material created by Tommy Boy artists.

12.   Kazuo "Sonny" Onoo was not a party to or involved in WCW's merchandizing agreement with Tommy Boy Records regarding the WCW Mayhem CD.  Mr. Onoo did not have a financial interest in the CD's creation, marketing or sales, nor was he entitled to any profits or other compensation from the sale of this CD.

13.   As a result of my position at WCW, I also have personal knowledge regarding how on-air talent was compensated by WCW and the basis of their level of compensation.  Further, I have personal knowledge regarding how on-air talent was generally utilized by WCW.

14.  At WCW, Wrestlers were compensated and given wrestling opportunities that were commensurate with their skill level and crowd appeal.  Mr. Walker was no exception.

15.  Mr. Walker wrestled in over eighty (80) matches while he was under contract with WCW.  In some of these matches, he prevailed over his opponent.  In other instances, the match was scripted in Mr. Walker's opponent's favor.

FURTHER AFFIANT SAYETH NAUGHT.

This 12ᵗͪ day of December, 2002.



DIANA MYERS

Sworn to and subscribed
before me this 12ᵗͪ day
of December, 2002.

Notary Public

My Commission Expires:
March 31, 2005

Sandra M. Gaudet
Commission # DD 002932
Expires March 31, 2005
Bonded Thru
Atlantic Bonding Co., Inc.



# EXHIBIT / ATTACHMENT

## _____ B _____

(To be scanned in place of tab)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DARRON EASTERLING,                     )
                                       )
                    Plaintiff,         )
                                       )    CIVIL ACTION FILE
v.                                     )
                                       )    NO. 1:00-CV-1715-CC
WORLD CHAMPIONSHIP WRESTLING, INC.,)
TURNER SPORTS, INC. and TURNER         )
BROADCASTING SYSTEM, INC.,             )
                                       )
                    Defendants.        )

## AFFIDAVIT OF JOSEPH HAMILTON

JOSEPH HAMILTON, who having personally appeared before the
undersigned officer duly authorized to administer oaths and
having been first duly sworn according to law, deposes and
states the following:

1.    My name is Joseph Hamilton.  I am of majority age, and
I give this testimony of my own free will.  I have personal
knowledge of and am competent to testify to the facts stated
herein.  The facts stated herein are true and correct.

2.    I first began providing services to Universal
Wrestling Corporation (f/k/a World Championship Wrestling, Inc.
and hereinafter referred to as "WCW") in 1989 as a member of the
creative staff.  After working with the organization in various
capacities, I eventually became the Director of the Power Plant,
WCW's training facility.

3.    As part of my duties as Director of the Power Plant, I worked with WCW's professional wrestlers and trainees. At times, members of the creative staff and I would discuss my opinion with respect to wrestling and training talent.

4.    Based on my experience in the wrestling industry and at WCW, the creators, producers, bookers and marketers of professional wrestling programming such as WCW's use their better performers with greater frequency in their wrestling programs. Factors considered by the creators, producers, bookers and marketers of these programs in determining who the better wrestlers are include the wrestler's crowd appeal, stage presence, charisma, uniqueness, wrestling ability and physique. In light of these factors, I periodically evaluated wrestlers and trainees at the Power Plant, to determine how well they were progressing.

5.    Darron Easterling first became affiliated with WCW in 1997 when he was accepted into the professional wrestling training program at the Power Plant facility. The goal in including Mr. Easterling in the training program was to help him develop the physical skills, charisma, acting ability, stage presence and other characteristics necessary to be a successful wrestler with WCW. Mr. Easterling was invited to train at the

Power Plant because he had good size and possessed an impressive physique.

6. At the end of 1998 and into 1999, WCW began to restructure much of its operations, including the professional wrestling training program located at the Power Plant. WCW transferred its Power Plant facility from its previous location on Carroll Drive, to a new location on Log Cabin Drive, in Smyrna, Georgia. This new establishment was to serve as the training facility for a smaller group of wrestler trainees than the group that had previously been training at the old Power Plant location. Each wrestler selected to train at the new Power Plant facility was to be signed to a trainee independent contractor agreement.

7. To determine which wrestler trainees would receive agreements, I, along with other WCW training officials, spent roughly six to eight weeks evaluating the talent of approximately forty individuals who were then training at the Power Plant. At the end of this evaluation period, WCW conducted "try outs" for all of the wrestler trainees.

8. During this restructuring and the evaluation process at the Power Plant, Mr. Easterling had been training at WCW only about a year. Despite Mr. Easterling's size and physique, he was clumsy and lacked the necessary training, wrestling skills,

persona and other attributes necessary to be a successful
professional wrestler.  WCW concluded that Mr. Easterling did
not have the potential to develop these necessary skills.

9.    Based on this evaluation of Mr. Easterling, WCW
concluded that Mr. Easterling was not as deserving of a training
contract as other trainees at the Power Plant and decided not to
offer Mr. Easterling a contract to train at the new facility.
This decision had nothing to do with Mr. Easterling's race.

FURTHER AFFIANT SAYETH NAUGHT.

This 29TH day of January, 2003.

JOSEPH HAMILTON

Sworn to and subscribed
Before me this 29TH day
Of January, 2003.

Notary Public

My Commission Expires:
Notary Public, Hall County, Georgia
My Commission Expires June 29, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DARRON EASTERLING,                     )
                                       )
                  Plaintiff,           )
                                       )      CIVIL ACTION FILE
v.                                     )
                                       )      NO. 1:00-CV-1715-CC
WORLD CHAMPIONSHIP WRESTLING, INC.,)
TURNER SPORTS, INC. and TURNER         )
BROADCASTING SYSTEM, INC.,             )
                                       )
                  Defendants.          )

### CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of

this **_MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR_**

**_SUMMARY JUDGMENT_** upon the interested parties by hand delivery

to:

Cary Ichter
Kelly Jean Beard
Charles Gernazian
Michelle M. Rothenberg-Williams
MEADOWS, ICHTER AND BOWERS, P.C.
Fourteen Piedmont Center, Suite 1100
3535 Piedmont Road
Atlanta, GA  30305

This 30th day of January, 2003.

_____
Evan H. Pontz
TROUTMAN SANDERS LLP
Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000

ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DARRON EASTERLING, )
                                       )
                  Plaintiff,           )
                                       )        CIVIL ACTION FILE
v.                                     )
                                       )        NO. 1:00-CV-1715-CC
WORLD CHAMPIONSHIP WRESTLING, INC.,)
TURNER SPORTS, INC. and TURNER         )
BROADCASTING SYSTEM, INC.,             )
                                       )
                  Defendants.          )

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants Universal Wrestling Corporation (f/k/a World
Championship Wrestling, Inc.) ("WCW"), Turner Sports, Inc.
("TSI") and Turner Broadcasting System, Inc. ("TBS") submit this
Statement of Undisputed Material facts in support of their
Motion for Summary Judgment as to all claims brought by
Plaintiff Darron Easterling ("Easterling").

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.

WCW created, produced, and marketed professional wrestling
events during the 1990s and through March 2001. (Affidavit of
Diana Myers ("Myers Aff."), ¶ 3).

104

2.

WCW's wrestling events were seen by live audiences and/or aired on various television networks and pay-per-view, cable and satellite systems.  (Myers Aff. ¶ 3).

3.

The wrestlers and other on-screen talent who appeared in WCW's wrestling events provided their services to WCW as independent contractors, either through formal written contracts or without written agreements.  (Myers Aff. at ¶ 4).

4.

A creative team of writers and producers at WCW created WCW's wrestling events, both live and taped, with the goal of entertaining wrestling fans and general audiences nationwide. (Myers Aff. at ¶ 3).

5.

After having much commercial and financial success in the mid-to-late 1990s, WCW's business suffered a sharp downturn in late 1998 into 1999.  (Myers Aff. at ¶ 6).

6.

As a result of this business downturn, WCW began to significantly restructure many of its operations, including its training facility, known as the Power Plant.  (Myers Aff. at ¶ 6; Affidavit of Joseph Hamilton ("Hamilton Aff."), ¶ 6).

7.

Despite WCW's restructuring efforts, WCW's business downturn continued, and in March 2001, WCW sold certain of its assets and completely ceased its operations.  (Myers Aff. at ¶ 8).

8.

After the sale of its assets was completed, WCW changed its name to Universal Wrestling Corporation.  (Myers Aff. ¶ 8).

9.

Easterling first became involved with professional wrestling in 1997, after a friend recommended that he tryout for WCW.  (Deposition of Darron Easterling ("Easterling Dep."), at 15-16).

10.

Although Easterling did not have any professional wrestling experience, Easterling contacted WCW and inquired about a tryout.  (Easterling Dep. at 16).

11.

In February 1997, Easterling attended a three day tryout, for which he paid a $250.00 fee.  (Easterling Dep. at 16).

12.

After Easterling's tryout, WCW invited Easterling to train in WCW's full-time professional wrestling training program. (Easterling Dep. at 21).

13.

The purpose behind this training program was to help Easterling develop not only the physical and wrestling skills necessary to wrestle professionally with WCW, but also the charisma, acting ability, and uniqueness necessary both to appeal to the masses and to compete in wrestling matches with minimal instruction.   (Hamilton Aff. at ¶ 5).

14.

Although Easterling's tryout was in February 1997 and WCW immediately invited Easterling to train full-time in the training program, he did not begin training at WCW until over a year later, in March 1998.   (Easterling Dep. at 15, 22).

15.

While Easterling trained at the Power Plant, he held two jobs.   (Easterling Dep. at 23, 36).

16.

Easterling worked full-time at an automobile detailing shop and worked part-time as a dancer.   (Easterling Dep.at 23, 36).

17.

Generally, Easterling would train at the Power Plant until
early afternoon, then he would go to his detailing job in the
afternoons. (Easterling Dep. at 23-24).

18.

Easterling danced on weekends. (Easterling Dep. at 23-24,
36).

19.

As part of the restructuring at WCW at the end of 1998 and
into 1999, WCW transferred its Power Plant facility from its
previous location to a new location on Log Cabin Drive, in
Smyrna, Georgia. (Hamilton Aff. at ¶ 6).

20.

WCW established this new facility to serve as WCW's
training facility for a smaller group of wrestler trainees than
the group who had previously been training at the former Power
Plant location. (Hamilton Aff. at ¶ 6).

21.

WCW planned to and did enter into written independent
contractor agreements with the wrestlers selected to train at
this new facility. (Hamilton Aff. at ¶ 6).

22.

To select the individuals who would be signed to
independent contractor agreements, WCW training officials spent
roughly six to eight weeks evaluating the skills and talents of
the approximately forty individuals who were then training at
the Power Plant.  (Hamilton Aff. at ¶ 7).

23.

At the end of this period, WCW conducted "tryout" sessions
and matches among all of the trainees.  (Hamilton Aff. at ¶ 7).

24.

WCW conducted the tryouts and made decisions regarding
which Power Plant trainees would be offered written agreements
in early 1999.  (Hamilton Aff. at ¶¶ 6-7).

25.

At the time the tryouts were held, Easterling had been
training less than a year at WCW.  (Hamilton Aff. at ¶ 8;
Easterling Dep. at 38).

26.

Easterling participated in a tryout match.  (Easterling
Dep. at 41-42).

27.

Although WCW believed that Easterling was a good size and
possessed an impressive physique, because Easterling had no

professional wrestling experience prior to training with WCW, and had trained less than a year prior to the tryouts, Easterling had not acquired the skills necessary to be a professional wrestler. (Hamilton Aff. at ¶ 8; Deposition Joseph N. Hamilton ("Hamilton Dep."), at 66).

28.

Further, upon evaluation, WCW concluded that Easterling had less potential to develop into a successful professional wrestler than other trainees. (Hamilton Aff. at ¶ 8).

29.

He appeared clumsy in the ring and had difficulty staying on his feet. (Hamilton Aff. at ¶ 8; Hamilton Dep. at 66).

30.

Based on Easterling's lack of experience, failure to develop the skills necessary to be a professional wrestler in the short period he trained at WCW, and WCW's belief that Easterling did not have potential to develop those skills, WCW concluded that Easterling was not as deserving of a trainee contract as other trainees and did not offer Easterling a contract to train at the new facility. (Hamilton Aff. at ¶¶ 8-9).

1108676_2.DOC                                    -7-

This 30th day of January, 2003.

TROUTMAN SANDERS LLP

_Evan H. Pontz_

JOHN J. DALTON
Georgia Bar No. 203700
JAMES A. LAMBERTH
Georgia Bar No. 431851
ERIC A. RICHARDSON
Georgia Bar No. 233873
EVAN H. PONTZ
Georgia Bar No. 583577

Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

```
DARRON EASTERLING,                    )
                                      )
                  Plaintiff,          )
                                      )      CIVIL ACTION FILE
v.                                    )
                                      )      NO. 1:00-CV-1715-CC
WORLD CHAMPIONSHIP WRESTLING, INC.,)
TURNER SPORTS, INC. and TURNER        )
BROADCASTING SYSTEM, INC.,            )
                                      )
                  Defendants.         )
```

CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of
*DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF*
*THEIR MOTION FOR SUMMARY JUDGMENT* upon the interested parties by
hand delivery to:

Cary Ichter
Kelly Jean Beard
Charles Gernazian
Michelle M. Rothenberg-Williams
MEADOWS, ICHTER AND BOWERS, P.C.
Fourteen Piedmont Center, Suite 1100
3535 Piedmont Road
Atlanta, GA  30305

This 30th day of January, 2003.

EVAN H. PONTZ
Georgia Bar No. 583577

TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street, N.E.
Suite 5200
Atlanta, GA  30308-2216
(404) 885-3000 (voice)
(404) 885-3995 (facsimile)